Josephine C. WOMACK, Petitioner,

v.

BLUE CROSS AND BLUE SHIELD OF
TENNESSEE and Sumner County Farm
Bureau, Respondents.

Supreme Court of Tennessee.

Feb. 4, 1980.

Fred A. Kelly, Kelly, Harsh & Kelly, Gallatin, for petitioner.

Arthur E. McClellan, Gallatin, for respondents.

## OPINION

FONES, Justice.

Plaintiff, Josephine Womack, sued to recover benefits under a health and accident policy. Defendant, Blue Cross and Blue Shield, defended on the ground that several questions on its application had not been answered truthfully by plaintiff. The trial judge submitted the case to the jury for a general verdict. The jury found for the plaintiff and awarded a twenty-five percent

bad faith penalty. The trial judge eliminated the bad faith penalty but approved the verdict for the plaintiff for the sum due under the policy. The Court of Appeals reversed and dismissed, finding that plaintiff's answers to questions (j) and (n) were "indisputably incorrect" and that as a matter of law the misrepresented facts materially increased the risk of loss and that the trial judge should have granted defendant's motion for a directed verdict.

We do not agree that a directed verdict was appropriate, but the case must be remanded for a new trial because the issue of the truthfulness of plaintiff's answers should have been submitted to the jury on interrogatories for a special verdict and because of an erroneous jury instruction.

### I.

■ The law applicable to the issue of misrepresentation in an application for insurance is well settled in Tennessee. T.C.A. § 56–1103 provides:

"*Misrepresentation or warranty will not avoid policy—Exceptions.*—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss."

Under this statute, to avoid coverage the insuror must first prove that the answers in the application were false; then it must prove either that the false answers were given with intent to deceive the insuror or that the false answers materially increased the risk of loss.

■ Whether the insured's answers to the questions on the application are true or untrue is to be determined by the trier of fact and when a jury is demanded, cannot be taken from them and decided by the trial judge unless the minds of reasonable men could reach only one conclusion as to whether the answers were true or false. The same is true if the insuror claims that false answers were made with intent to deceive. When only these two issues are raised the jury may properly return a general verdict. However, if the insuror claims that the false answers materially increased the risk of loss a question of law arises. *Mutual Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 194 S.W. 581 (1917); *Nicholson v. Time Ins. Co.*, 496 S.W.2d 516 (Tenn.App.1973); *Tegethoff v. Metropolitan Life Ins. Co.*, 57 Tenn.App. 695, 424 S.W.2d 565 (1966); *Sloop v. Mutual of Omaha Ins. Co.*, 55 Tenn.App. 656, 404 S.W.2d 265 (1965). In this instance, use of a general verdict is inappropriate. The jury may determine whether the answers were false and, if so, whether there was intent to deceive, but only the trial judge may determine whether false answers materially increased the risk of loss. The use of a special verdict is appropriate in this situation. *See* T.R.C.P. 49.01. *See, e. g., Mutual Life Ins. Co. v. Dibrell, supra; Bauer v. Mutual of Omaha Ins. Co.*, 62 Tenn.App. 189, 460 S.W.2d 366 (1970).

### II.

In the case before us, the two questions the Court of Appeals found were answered incorrectly were:

"Has any person for whom you are applying ever had or now have, any of the following:

. . . . .

(j) Irregular or excessive menstrual bleeding, 'female disorder'

. . . . .

(n) Any other medical or surgical advice or treatment or departure from good health within the last five years?"

Mrs. Womack went to Dr. Ellis, a gynecologist, in July, 1975, for a check-up and a Pap smear. Doctor Ellis' records show that she came for a "check-up" and he testified that her only specific complaint was that "her periods were somewhat heavier at times than they had been in the past." Mrs. Womack testified she told him that the first day or so of her period was heavier than the remainder of the time; that on

occasions she passed blood clots; that she had light cramps and her legs and arms hurt; and that she had a fuzziness in her head but she had always had that with the menstrual cycle the first day or so. Mrs. Womack testified her check-up in 1975 resulted in Dr. Ellis telling her that everything was within "normal range." Some question exists whether Dr. Ellis' testimony can be said to contradict that of Mrs. Womack on that conclusion, but if so, it merely presents a jury issue. When Mrs. Womack was admitted to the hospital in November, 1976, according to Dr. Beck, her gynecological history revealed that she had "onset of menstrual periods at thirteen years of age, regular twenty-eight day cycle with a three to five day flow. She now had a six day flow which [sic] with some heavy menstrual flow." After giving that history Dr. Beck was asked and answered as follows:

"Q You described a six-day period and I think you are quoting that she had some dizziness and aching; and in your experience as a physician, do you find that particularly uncommon in women?

A No, sir. It is very common. They have many symptomatic complaints surrounding their menstrual periods."

We are unable to conclude, as did the Court of Appeals, that the minds of reasonable men cannot differ as to whether the answer "no" to question (j) was false.

As recently as *Cecil v. Hardin*, 575 S.W.2d 268 (Tenn.1978), we stated the requirements for sustaining a directed verdict.

"On review of the grant of a directed verdict on motion of a defendant, it is not the office of an appellate court to weigh the evidence. Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced." *Id.* at 270.

On the issue of whether Mrs. Womack's answer to question (j) was true or false, her testimony and that of Dr. Beck, that her menstrual cycle and flow and accompanying complaints were within normal range and common experience, made it improper to grant a directed verdict, as the trial judge correctly concluded.

Question (n) is in fact four questions in one. (1) Have you ever had any other medical advice; (2) have you ever had any other surgical advice; (3) have you ever had any other treatment; (4) have you ever had any other departure from good health in the last five years? There is no evidence whatever that Mrs. Womack had had any other surgical advice or any other treatment. The only evidence of any departure from good health within the last five years relates to the irregular or excessive bleeding, female disorder question which, as indicated herein, we think was a jury question. The remaining question is whether her answer, that she had not received any other medical advice, was false as a matter of law.

Mrs. Womack filled out the application and signed it on June 11, 1976. It is undisputed that she went to Dr. Ellis for an annual check-up approximately eleven months prior to submitting the application. The insurance company's witness testified that if Mrs. Womack had answered question (n) "yes" and revealed under "remarks" the name and address of her physician, as the application requires in the case of a "yes" answer, they would have made inquiry of the doctor and would have been able to decide whether to place any exclusion in her policy. It follows from that testimony that a "yes" answer to question (n) would not have automatically resulted in an increase in the risk or refusal to issue the policy. Thus it appears that under the facts of this case what the insurance company wanted to know of this applicant was whether she had had a physical examination or check-up and the name and address of the physician. We think the question drafted by the insurance company was misleading, certainly insofar as it was expected by the insurance company to elicit the fact of an annual check-up

and the name of the physician performing same, even if the results were within normal limits. Lumping "surgery," "treatment," "departure from good health," and "advice" into the same question to be answered "yes" or "no" was ambiguous and misleading. The ambiguous wording of this question is important in this factual situation where the only controversy is whether an annual check-up, which according to plaintiff resulted in no recommended treatment and no information that she had suffered a departure from good health, constituted medical advice requiring a "yes" answer to question (n). *Cf. Nicholson v. Time Ins. Co., supra.* In our opinion the evidence in this case presented a factual issue to be resolved by the jury as to whether Mrs. Womack's answer to question (n) was true or false.

### III.

In this case, it was the insurance company's position that one or more of Mrs. Womack's answers contained misrepresentations, that the misrepresentations were made with actual intent to deceive, or in the alternative, that the matter misrepresented increased the risk of loss. In the trial court, the insurance company moved for a special verdict upon the issues of fact, and the denial of that motion is assigned as error here.

The insurance company was entitled to a judgment voiding the policy if a misrepresentation was made with intent to deceive or if the matter misrepresented increased the risk of loss. The insurance company was entitled to have the jury determine whether Mrs. Womack made any misrepresentation and, if so, whether there was actual intent to deceive and if the jury found a misrepresentation but no actual intent to deceive, the insurance company was entitled to have the trial judge pass on the question of whether the particular misrepresentation that was made increased the risk of loss. The general verdict rendered by the jury in favor of plaintiff makes it impossible to determine whether they found that Mrs. Womack made no misrepresentation or that she made one or more misrepresentations but with no actual intent to deceive. The jury's verdict could have been based upon findings that (1) Mrs. Womack made a misrepresentation, but (2) she had no actual intent to deceive, as there was evidence upon which such findings could have been made. In that event the trial judge would have been required to rule upon whether the misrepresentation increased the risk of loss. The general verdict denied the insurance company any consideration by judge or jury of whether there was a misrepresentation that increased the risk of loss. Of course, it was inappropriate to submit that issue to the jury and in fact the trial judge did not do so.

Defendant contends that the trial judge erred in charging the jury plaintiff's special request number one and in refusing to charge defendant's special request number four. It is apparent that these requests would be inappropriate and must be reframed upon retrial and submission of the issues to the jury for special verdicts. It is, however, proper that we point out that the use of the phrase "knew or should have known" that her answers were erroneous, is incorrect. The statutory language is that, to void the policy, the misrepresentation must be made with *actual* intent to deceive, a test that precludes a "should have known" determination.

### IV.

Upon retrial, interrogatories should be submitted to the jury on each question on the application of insurance about which the evidence is in dispute as to whether plaintiff's answers were true or false, and if false, whether there was an actual intent to mislead the insuror. The question of whether any false answers materially increased the risk of loss if there was no intent to deceive are questions for decision by the trial judge, if the jury's verdict requires that determination.

Reversed and remanded for a new trial consistent with this opinion. Costs in this Court are adjudged against the defendant.

BROCK, C. J., and COOPER, HENRY and HARBISON, JJ., concur.