**Gene L. McDANIEL, Appellee,**

v.

**PHYSICIANS MUTUAL INSURANCE COMPANY, Appellant.**

Supreme Court of Tennessee, at Jackson.

Aug. 3, 1981.

Rehearing Denied Sept. 21, 1981.

Elmore Holmes, III, Prince C. Chambliss, Jr., Memphis, for appellant; Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, of counsel.

James D. Causey, Causey & Ellis, Memphis, for appellee.

OPINION

FONES, Justice.

This is a suit to recover benefits allegedly due the policyholder under an accident and sickness insurance policy.

The trial court held as a matter of law that plaintiff had made a misrepresentation by his failure to disclose the fact that he had additional insurance with another insurance company, but that this misrepresentation did not increase the risk of loss to defendant. The only issue submitted to the jury was whether plaintiff made the false statement with actual intent to deceive defendant. The jury returned a verdict in favor of plaintiff and defendant appealed.

Two members of the Court of Appeals held that the issue of whether there had been a misrepresentation should have been submitted to the jury, and that it was error on the part of the trial judge to exclude defendant's agent's testimony concerning the manner in which the controverted question was posed to plaintiff. The third judge concurred, but went further, stating that the trial judge erred in concluding the statements made by plaintiff, if false, did not increase the risk to defendant.

Defendant appealed to this Court, claiming that the majority of the Court of Appeals erred in holding there was a factual issue as to whether there had been a misrepresentation and erred in failing to reach the issue of whether the misrepresentation increased the risk of loss to defendant. Plaintiff also appealed, claiming the controlling statute in this case should have been T.C.A. § 56–26–119 and not § 56–7–103.

I.

The record reveals that plaintiff began working for the Civil Aeronautics Adminis-

tration as an air traffic controller in 1955; he served in that capacity until he was disqualified for medical reasons in 1976.

On May 19, 1975, plaintiff applied for insurance with Charter National Life Insurance Company. Plaintiff was issued an insurance policy from Charter National dated June 23, 1975, which remained in effect for all relevant periods involved in this case. The policy basically provided coverage for total and partial disability due to injuries and for total disability due to sickness. "Disability" was defined as the "inability of the insured to engage in his occupation," or loss of time spent in the "usual daily performances of the duties of his occupation."

This policy was to pay him $650 per month while totally disabled.

At some point, the exact date of which does not appear in the record, plaintiff received some literature in the mail from defendant, Physicians Mutual, inquiring about his need for insurance. Plaintiff filled out the questionaire and returned it to defendant. Plaintiff was subsequently contacted by defendant's agent, Mr. Trammell, who arranged a meeting with plaintiff at his (plaintiff's) home. At this meeting Trammell recorded the information elicited from plaintiff on defendant's application form. Question three of this application appeared as follows:

| 3. What issued or pending individual or group accident or sickness insurance do you now have? (Circle pending coverage) | Name of Company | Monthly Benefits | | Daily Hospital Benefit | Maximum Medical Benefit |
|---|---|---|---|---|---|
| | | Sickness | Accident | | |
| | Groupe | | | Semi | |
| | (Blue Cross) | | | prvt. rm. | |
| | | | | | |

Under "Name of Company" was written "Groupe (Blue Cross)" and under "Daily Hospital Benefits" was written "semi prvt. rm." The application was signed by plaintiff and dated December 30, 1975. Plaintiff was issued a policy some five or six weeks later. The policy provided coverage for "Disability due to sickness or accidental bodily injury." The policy was to pay him $1000 per month while totally disabled.

On August 12, 1976, plaintiff was placed on temporary disability by his employer and on December 21, 1976, was permanently disqualified, apparently due to high blood pressure. He has not worked as an air traffic controller since that time.

Plaintiff then filed a claim with defendant and in the claim form mentioned his insurance policy with Charter National. Defendant denied coverage based on the alleged misrepresentations found in the application. Defendant did tender the return of plaintiff's premium, but plaintiff refused to accept it; this suit was subsequently filed.

At trial, plaintiff testified that he did not mention his insurance policy with Charter National to Trammell because he was never asked any questions regarding *disability* insurance, but rather was only asked about sickness and accident insurance, which he fully disclosed. He testified that had he been asked about disability insurance, he would have disclosed the Charter National policy.

Trammell also testified and at one point admitted that he never asked plaintiff any questions beyond those found in the application form. As to question three, however, he stated that he asked "Do you have any other insurance?" to which plaintiff responded "I have." At this point in the trial an objection was made by plaintiff's counsel, who claimed that defendant was attempting to impeach its own witness and change the terms of its own contract. The trial judge sustained the objection.

## II.

Coverage was denied by defendant in this case due to the provisions of T.C.A. § 56–7–103, which states:

Misrepresentation or warranty will not avoid policy—Exceptions.—No written or oral misrepresentation or warranty there-

in made in the negotiations of a contract or policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

The burden of establishing a "misrepresentation" defense is clearly placed on the insurance company. As this Court recently held in *Womack v. Blue Cross and Blue Shield*, 593 S.W.2d 294, 295 (Tenn.1980):

"Under the statute, to avoid coverage the insuror must first prove that the answers in the application were false; then it must prove either that the false answers were given with intent to deceive the insuror or that the false answers materially increased the risk of loss.

"Whether the insured's answers to the questions on the application are true or untrue is to be determined by the trier of fact and when a jury is demanded, cannot be taken from them and decided by the trial judge unless the minds of reasonable men could reach only one conclusion as to whether the answers were true or false."

The Court further noted that the issue of whether false answers were given with "intent to deceive" was a question for the jury, but the issue as to whether the false answers increased the risk of loss was a question of law to be determined by the trial judge. *Id.*

■ From the facts of this case we cannot conclude as a matter of law that plaintiff's answer to question three in the application was a misrepresentation. We agree with the Court of Appeals that this question was ambiguous and reasonable minds may differ as to whether the answer given by plaintiff to this question was true or false. This issue should have been submitted to the jury. The jury would be free to determine, under all the facts and circumstances of this case, whether the term "sickness/accident" was synonymous with "disability" insurance of whether plaintiff could have reasonably thought this question referred only to the medical and hospital insurance that was included in his Blue Cross policy.

If failure to disclose the Charter National coverage is found to be a misrepresentation, we find as a matter of law that the risk of loss was increased. Failure to disclose information regarding other "disability" insurance did, in this case, leave him over-insured according to the criteria established by defendant's company. The extent of plaintiff's existing coverage would, in this case, naturally and reasonably affect defendant's decision to issue him additional coverage. *See e. g., Independent Life Ins. Co. v. Russell*, 18 Tenn.App. 622, 80 S.W.2d 846 (1934). Thus, failure to disclose this information, if properly requested, would increase the risk to the insurance company as a matter of law.

We agree with the Court of Appeals that defendant should have been allowed to elicit from Trammell information on exactly how question three of the application was asked. Although defendant would not be allowed to change the terms of its own contract, it would be allowed to introduce evidence explaining the ambiguous question; such information would be relevant for the jury to consider in deciding whether plaintiff did or should have understood that he was expected to disclose the Charter National disability insurance. Plaintiff should also be allowed to explore agent Trammell's understanding that plaintiff had additional insurance.

As stated, the issue of "actual intent to deceive" was submitted to the jury and found favorable to plaintiff. Upon retrial the evidence may or may not justify submission of that issue to the jury. In the present posture of the case, we deem it unnecessary and inappropriate to comment further upon that issue.

### III.

■ The final issue to be resolved involves plaintiff's contention that this case was tried under the wrong statute; that T.C.A. § 56–7–103 does not apply but rather T.C.A. §§ 56–26–101—202, and specifically

T.C.A. § 56–26–119, are the appropriate statutes governing the facts of this case. This issue has been raised for the first time in plaintiff's application for permission to appeal to this Court. While normally we would not address issues that have not been raised in the lower courts, due to the fact that this case is to be remanded for retrial, this issue will be addressed at this time to avoid further confusion and litigation on this issue.

Chapter 26 is entitled "Accident and Sickness Insurance," which is defined in T.C.A. § 56–26–101 as "any policy or contract covering insurance against loss resulting from sickness or from bodily injury or death by accident or both."

In the present case, the insurance contract with defendant was to pay benefits for "disability due to sickness or accidental bodily injury." We agree with plaintiff's assertion that this chapter applies under the facts of this case.

T.C.A. § 56–26–119 states as follows: "False statements in application.—The falsity of any statement in the application for any policy covered by this chapter may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or hazard assumed by the insurer and then not if the agent taking the application knew of such falsity."

Although the two statutory provisions are somewhat different, they do not in any way appear to be inconsistent with each other. We have found nothing in the express language or the legislative history of Chapter 26 indicating the repeal of the application of T.C.A. § 56–7–103 to "Accident And Sickness Insurance." It is a well settled principle of statutory construction that "[i]t is the duty of the Court in construing statutes to avoid a construction which will place one statute in conflict with another, and the Court should resolve any possible conflict between the statutes in favor of each other, whenever possible, so as to provide a harmonious operation of the laws." *Parkridge Hospital, Inc. v. Woods*, 561 S.W.2d 754, 755 (Tenn.1978).

In addition, "any statute, not repealing directly or by implication any previous law, is cumulative to such law," and "repeals by implication are not favored . . . ." *Hibbett v. Pruitt*, 162 Tenn. 285, 293, 36 S.W.2d 897, 900 (1931).

With these concepts in mind, we see no reason why both T.C.A. § 56–7–103 and § 56–26–119 cannot apply simultaneously and jointly in cases involving "Accident And Sickness Insurance" where a defense of misrepresentation or false statement is alleged.

The affect of holding that both statutes apply simply adds, as a possible issue, the question of whether or not the agent taking the application knew of the false statement. That issue is obviously one of fact to be decided by the trier of fact, judge or jury. When that issue is formulated by the evidence and decided in favor of the policy holder, the issues of intent to deceive and of the affect of a false statement upon the risk of loss are rendered moot.

Remand for a new trial consistent with this opinion. Costs of this appeal are assessed against plaintiff and defendant equally.

HARBISON, C. J., and COOPER, BROCK and DROWOTA, JJ., concur.

## OPINION ON PETITION TO REHEAR

PER CURIAM.

The petition to rehear filed by Gene L. McDaniel, has been considered by the Court and found to be without merit. It is, therefore, respectfully denied at appellee's cost.