IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT KNOXVILLE
_____

**GLENN T. McCOLPIN,**

     Plaintiff-Appellant,

                                       Hamilton Chancery No. 73502

Vs.                               C.A. No. 03A01-9602-CH-00067

**NORTH ATLANTIC CASUALTY
& SURETY INSURANCE COMPANY,
INC.,**

     Defendant-Appellee.
_____

FROM THE HAMILTON COUNTY CHANCERY COURT
THE HONORABLE R. VANN OWENS, CHANCELLOR

Howard B. Barnwell, Jr., of Chattanooga
For Plaintiff-Appellant

Donald E. Warner and Sean Antone Hunt of
Leitner, Warner, Moffitt, Williams, Dooley & Napolitan, PLLC,
of Chattanooga, For Defendant-Appellee

*AFFIRMED AND REMANDED*

Opinion filed:

                                         **W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**WILLIAM H. INMAN, SENIOR JUDGE**

     This is a suit for damages against an insurance company for the alleged breach of a lawyer's professional liability insurance policy. Plaintiff, Glenn McColpin, appeals from the judgment of the chancery court for the defendant, North Atlantic Casualty & Surety Insurance

Company, Inc. (hereinafter, "North Atlantic").

On March 7, 1987, McColpin, a Chattanooga attorney and owner of Associates Title Guaranty, Inc., (hereinafter, "Associates Title"), a title insurance company, supervised the closing of a real estate transaction. The subject property was located in Catoosa County, Georgia. James and Ann King (hereinafter, "the Kings") wished to purchase a house in Catoosa County, Georgia, but they were unable to obtain adequate financing. Under the terms of the transaction, Arden and Francis Harwell (hereinafter, "the Harwells") of Dayton, Tennessee, obtained a home mortgage loan for the Kings. The Kings were to live in the home, make the mortgage payments and pay the Harwells $5,000 for obtaining the loan. The deed was made out to the Harwells. McColpin prepared a contract whereby the Harwells would convey the deed to the Kings after the mortgage loan had been closed in the Harwell's name. At that time, the deed and the outstanding indebtedness would be conveyed to the Kings. However, this contract was never executed by the parties. The Kings stopped making payments, reasoning that the Harwells had the deed and that the Kings had no proof of ownership.

The Kings sought the services of Clifton Patty (hereinafter "Patty"), a Georgia attorney, in an attempt to resolve this debacle. On January 11, 1988, Patty wrote a letter to eight individuals including, *inter alia*, Glenn T. McColpin, Associates Title, and Karen S. Hill, the representative for Associates Title who handled the closing involving the property in question. The letter stated in pertinent part:

> The specific relief sought by the Kings is the conveyance of the real property from Arden C. Harwell and wife, Francis M. Harwell, to James L. King and wife, Ann C. King, assuming the outstanding indebtedness owing to United Guaranty Federal Savings Bank of Tullahoma, Tennessee. If this relief is not forthcoming on or before January 19, 1988, suit will be filed to seek an equitable decree requiring the conveyance of the real property aforesaid and appropriate damages from *each entity and person* involved in this transaction. (Emphasis supplied).

The relief demanded was not forthcoming. Therefore, on March 1, 1988, the Kings filed a complaint in the Superior Court of Catoosa County, Georgia, naming as defendants all parties mentioned in the January 11, 1988 letter except for Glen McColpin and two others. Both Associates Title and its representative Karen Hill were named in the Complaint. The trial of that cause resulted in a judgment entered September 18, 1989, against both Associates Title and Hill

for $1.00 in compensatory damages, $25,000.00 in punitive damages, and $6,732.19 in attorneys' fees and litigation expenses. The judgment was not satisfied, and on June 22, 1990, Patty took McColpin's deposition in aid of execution of the judgment entered in the aforementioned lawsuit.

In September 1990, McColpin applied for professional malpractice insurance with North Atlantic on behalf of himself and Chattanooga Title, the successor company to Associates Title. The application inquired, in pertinent part, as to previous claims, and McColpin replied as follows:

> (d) Does any lawyer named in Question 5(a) know of any facts, circumstances, acts, errors, or omissions that may result in a professional liability claim against him or his predecessors in business? [ ] Yes [X] No. **If either 9(c) or 9(d) are answered YES, submit SUPPLEMENTAL CLAIM INFORMATION form and copies of any summons, complaint and a narrative for each item.**

McColpin did not make any reference in the insurance application to the legal disputes arising from the real estate transaction involving the Kings. In reliance on McColpin's representations, North Atlantic issued a "claims made" policy effective from October 1, 1990, until October 1, 1991.

On January 9, 1991, the Kings filed a second lawsuit in the Superior Court of Catoosa County, Georgia, alleging legal malpractice against Glenn McColpin in connection with the March 7, 1987 real estate transaction which McColpin had supervised. McColpin gave notice and submitted the claim to North Atlantic for defense. North Atlantic declined to provide the requested defense based on Patty's letter of January 11, 1988, and the misrepresentations in the insurance application. McColpin defended the suit at his own expense, and the cause was ultimately settled for $10,000.00 in January 1994.

McColpin sued North Atlantic on July 30, 1993, in the Chancery Court of Hamilton County, Tennessee, for $34,000.00 in damages: the $10,000.00 paid to settle the lawsuit and the $24,000.00 for attorneys' fees incurred by McColpin in defending the lawsuit. The case was tried by the chancellor on September 14, 1995, without a jury. The chancellor filed a Memorandum Opinion on September 20, 1995, and later filed a Corrected Memorandum Opinion both of which are incorporated in the Order of Judgment entered October 13, 1995. The

chancellor determined that McColpin's knowledge was such that he should have divulged the information regarding the real estate transaction and given North Atlantic the option of determining whether an exclusion in the insurance policy pertaining to the real estate transaction in question should have been included. Therefore, the chancellor denied McColpin's claim, entered a judgment in favor of North Atlantic and dismissed the cause. McColpin has appealed and presents one issue for review which, as stated in his brief, is as follows:

> 1. The Trial Court erred in finding that the Appellant had no coverage under a "claims made" type malpractice insurance policy with Appellee, based upon a finding that the Appellant had a reasonable basis for prior knowledge of the claim when the Appellant entered into the contract of insurance.

In addition, North Atlantic presents two issues for appeal as stated in its brief:

> 1. Whether the evidence preponderates against the Chancellor's finding that Mr. McColpin's knowledge was of such significance that his failure to provide information surrounding the 1988 letter from Attorney Patty on the application for coverage amounted to a misrepresentation allowing North Atlantic to disclaim coverage for the event since the misrepresentation admittedly increased the risk of loss.

> 2. Whether the evidence preponderates against the Chancellor's finding that the "claim" made by Mr. & Mrs. King was not covered by the policy as (1) letter from Mr. Patty to Mr. McColpin of January 11, 1988, together with several other matters in which Mr. McColpin was greatly engrossed, constituted a "claim" such that coverage under the policy is not provided since the "claim" was not first made during the effective dates of coverage of the policy and (2) the letter from Attorney Patty and the other matters in which Mr. McColpin was greatly engrossed provided Mr. McColpin, prior to the issuance of the policy, with a reasonable basis to believe that a claim might be brought against him.

Basically, the issue presented for review is whether the chancellor erred in holding that the defendant insurance company was not obligated to provide coverage to McColpin under its policy. The record indicates that North Atlantic declined coverage to McColpin because of the express policy provision pertaining to coverage for acts occurring prior to the policy effective date, i.e., that "the insured had no reasonable basis to believe that the Wrongful Act was a breach of professional duty or might result in a claim."

Alternatively, North Atlantic asserts that McColpin made a misrepresentation of fact that increased the risk of loss and is thus not entitled to coverage pursuant to T.C.A. § 56-7-103

4

(1994).

We will first consider coverage provided under the express language of the policy.

The policy in question is a "claims made" policy, a policy providing insurance coverage for errors and omission when the claim is made during the policy period even though the alleged wrongful act occurred prior to the effective date of the policy. See generally, *Stiefel v. Ill. Union Ins. Co.*, 116 Ill. App. 3d 352, 452 N.E.2d 73, 75 (1983).

The North Atlantic policy provides, as pertinent to the issues before us, as follows:

**INSURING AGREEMENTS**

**1. COVERAGE**

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of any claim or claims, first made against the Insured during the policy period and reported to the Company during the policy period, arising out of any Wrongful Act by the Insured, or any other person for whose Wrongful Act the Insured is legally responsible, in rendering or failing to render Professional Services for others as defined herein, except as excluded or limited by the terms, conditions and exclusions of this policy.

Any services performed by the Insured in a lawyer-client capacity on behalf of one or more clients shall be deemed to be the performance of Professional Services although such services could be performed in whole or in part by nonlawyers.

The Wrongful Act must happen:

(a) during the policy period; or

(b) on or after the Retroactive Date shown on the Declarations, provided that prior to the effective date of this policy;

(1) the Insured did not give notice to any prior insurer of any such Wrongful Act;

(2) the Insured had no reasonable basis to believe that the Wrongful Act was a breach of professional duty or might result in a claim; and,

(3) there is no prior policy or policies which provide insurance for such liability or claim whether or not the available limits of liability on such prior policy or policies are sufficient to pay any liability or claim and whether or not the deductible provisions and amount of such prior policy or policies are different from this policy and whether or not such prior policy or policies are collectible in whole or part.

5

Under the terms of North Atlantic's insurance policy, a "claim" is defined as "a demand received by the Insured for money or services . . . ."

The letter from Attorney Patty expressly stated:

> The specific relief sought by the Kings is the conveyance of the real property from Arden C. Harwell and wife, Francis M. Harwell, to James L. King and wife, Ann C. King, assuming the outstanding indebtedness owing to United Guaranty Federal Savings Bank of Tullahoma, Tennessee. If this relief is not forthcoming on or before January 19, 1988, suit will be filed to seek an equitable decree requiring the conveyance of the real property aforesaid and appropriate damages from each entity and person involved in this transaction.

It is undisputed that McColpin admitted responsibility for the real estate transaction. Patty's letter notified McColpin that a lawsuit might be filed against him and others. In view of this letter, McColpin certainly should have had a reasonable basis to believe that the wrongful act was a breach of his professional duty and might result in a claim. The Kings filed a lawsuit in March 1988, against those individuals named in the January 11 letter, with the exception of McColpin and two others. Among the named defendants in the original suit were Associates Title, the title insurance company that McColpin owned, and Karen Hill, a lawyer working for Associates Title whom McColpin later married. On September 18, 1989, the Kings obtained a judgment against the defendants in an amount in excess of $30,000.00 which was not satisfied. Thereafter, McColpin was deposed in aid of execution of judgment on June 22, 1990, which was only two and one-half months before McColpin submitted his application to North Atlantic. In his deposition of December 6, 1994, Attorney Clifton Patty testified that he thought that McColpin was culpable from the time McColpin was deposed in aid of execution of judgment in June 1990.

We agree with the chancellor that the evidence in this case establishes that McColpin had a reasonable basis to believe that his act for which he seeks coverage was a breach of professional duty and had resulted in a claim by virtue of Mr. Patty's letter. Therefore, this act is not within the coverage provided by the policy in question.

We will next consider North Atlantic's assertion that there was a material misrepresentation that increased the risk of loss and thus defeats coverage under the policy.

The policy of insurance provides:

**7. APPLICATION:** By acceptance of this policy the Insured agrees that the statements in the application are his representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between the Named Insured and the Company or any of its agents, relating to this insurance.

The application for the policy provides immediately above the signature of the applicant as follows:

**NOTICE TO APPLICANT - PLEASE READ CAREFULLY REPRESENTATION: I/We represent that the information contained herein is true and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a Policy.**

The application asks the following specific questions:

9. (d) Does any lawyer named in Question 5(a) know of any facts, circumstances, act, errors, or omissions that may result in a professional liability claim against him or his predecessors in business?

McColpin answered "no" to this question.

T.C.A. § 56-7-103 (1994) provides:

**Misrepresentation or warranty will not avoid policy - Exceptions. -** No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Under this statute, whether the answers of the proposed insured on the application are true or untrue and whether the false answers were made with actual intent to deceive are questions of fact. *Womack v. Blue Cross and Blue Shield of Tennessee*, 593 S.W.2d 294 (Tenn. 1980). After a determination that the answers made by the insured are untrue, it then becomes a question of law for the Court as to whether the misrepresentation made by the insured materially increased the risk of loss. *Milligan v. MFA Mutual Ins. Co.*, 497 S.W.2d 736 (Tenn. App. 1973). In *Milligan*, the Court said:

The rule as announced and followed by our courts is that a misrepresentation about any matter of sufficient importance, in the opinion of the court, to naturally and reasonably influence the judgment of the insurer in making the contract, is a

7

> misrepresentation that "increases the risk of loss" within the sense of Section 56-1103 [now 56-9-103]. *Hughes Bros. v. Aetna Ins. Co.* (1923) 148 Tenn. 293, 255 S.W. 363; *Tegethoff v. Metropolitan Life Ins. Co., supra*, and the cases therein cited.

497 S.W.2d at 739.

In the instant case, McColpin acknowledged that if the January 11, 1988 letter from Patty was a claim, then a misrepresentation concerning the letter increased the risk of loss. The question on the application sought "any facts, circumstances, acts, errors, or omissions that may result in a professional liability claim." At the very least, Patty's January 11, 1988 letter memorialized facts and circumstances that could result in a professional liability claim against McColpin. Moreover, subsequent to the 1988 letter, other events certainly made McColpin aware of facts and circumstances that could have led to a possible claim against him. A lawsuit was initiated involving the underlying real estate transaction, and judgment was entered against McColpin's title company and its employee who is now McColpin's wife. McColpin's deposition taken in aid of execution of that judgment indicated his involvement. The evidence does not preponderate against the finding of the trial court that McColpin was aware of facts and circumstances that should have been disclosed in the application for the North Atlantic policy.

McColpin simply did not correctly answer the question on the application. Knowledge of these facts and circumstances are of sufficient importance to "naturally and reasonably influence the judgment" of North Atlantic. *Milligan*, at 739. Since there was a misrepresentation, and there was an increase in the risk of loss, the trial court was correct in finding no coverage under the policy.

Accordingly, the judgment of the trial court is affirmed, and this case is remanded to the trial court for such further proceedings that may be necessary. Costs of the appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**


_____
**DAVID R. FARMER, JUDGE**


_____

8

**WILLIAM H. INMAN, SENIOR JUDGE**