IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 2, 2003 Session

## THE BRADLEY FACTOR, INC., v. PAT HOLMES

**Direct Appeal from the Chancery Court for Bradley County**
**No. 02-157     Hon. Jerri S. Bryant, Chancellor**

**FILED FEBRUARY 24, 2004**

**No. E2003-01571-COA-R3-CV**

---

In this action based on a personal guaranty agreement, the Trial Court determined there were no disputed issues of material fact and awarded summary judgment on the agreement. Defendant has appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Michael E. Richardson, Chattanooga, Tennessee, for Appellant.

Michael E. Jenne, Cleveland, Tennessee, for Appellee.

### OPINION

In this action to recover under a personal guaranty agreement, the Trial Court granted plaintiff summary judgment, and defendant has appealed.

Defendant Homes was a shareholder and CEO of Southern States Express, Inc. ("Southern States"), a small regional trucking firm. Southern States had a $700,000.00 line of credit with First Citizens Bank of Cleveland, secured by the company's receivables and also by pledged certificates of deposit personally owned by Holmes totaling $325,000.00. At some point, the bank required additional security, either in additional collateral or a personal guaranty from Holmes. Holmes enlisted the assistance of Robert Anderson, a CPA and financial consultant who had provided

services for the company in the past and was familiar with Southern States' business. In December of 2000, Anderson contacted Steve Campbell and Ron Williams, President and Vice-President respectively of plaintiff, on behalf of Southern States about the possibility of entering into a factoring agreement for Southern States' receivables. The record establishes that Anderson made the initial contact and handled all the negotiations and discussions with the plaintiff's representatives, primarily Williams, which culminated on January 30, 2001 in the execution of the factoring agreement, security agreement, demand note, the continuing guaranty and related documents. Holmes had no contact with the plaintiff's representatives until shortly before the closing, relying upon Anderson to work out the details of the deal. Holmes met Campbell and Williams at the closing on January 20, 2001.

Plaintiff agreed to factor Southern States $700,000.00 receivables upon the pledging of the $325,000.00 in CD's personally owned by Holmes, plus a security interest covering the company's assets. The document at issue is entitled "Continuing Guaranty" and provided the undersigned guarantors gave plaintiff ". . . as an absolute guaranty of the prompt payment in full of any and all indebtedness, direct or indirect, absolute or contingent, owing by Debtor to the Factor, . . ."

Holmes argues that there is material evidence of fraudulent misrepresentations by plaintiff's representatives to him, and that the parol evidence rule is not applicable. This argument is without merit. Holmes, in his deposition, stated that under no circumstances did he intend to, nor would he sign a guaranty with plaintiff that would make him personally liable for Southern States' debts. He initially testified the only time he had been told there was no personal guaranty was at closing by Steve Campbell. Later, he testified that he was given the impression he was not signing a personal guaranty, "by officers of the Bradley Factor", although he could not say who, and this was well before the closing. Nevertheless, he eventually admitted that he could not be certain and that maybe no one from Bradley advised him about the guaranty. He conceded that it was most probably Anderson who he relied upon to negotiate the deal and relay the terms to him. Moreover, he testified:

Q. Did you read this agreement before you signed it, Mr. Holmes?

A. Yeah, I read most of it. I sure did.

. . .

Q. Do you recall Mr. Ron Williams going over with you this personal guaranty?

A. I've got it.

Q. Do you recall him going over this personal guaranty with you?

A. Ron was very thorough in this. We went over this. You know, we went into this thing - - I understood that - - and Ron and I have worked together before this document was done and then subsequent to the closing of the company. Ron went over most of this stuff.

And I'm just going to tell you. There was no way that this document or any of this other deal would have been done if there was a personal guaranty on this thing. Now, you can try to make a trick on words, a continuing and a personal, and call them the same thing when they're really not. That's why this document was signed as Patrick Holmes, C.E.O.[1]

The Answer filed by the defendant does not raise fraud or fraud in the inducement as an affirmative defense. There are no pleadings in the record that implicate a fraud or misrepresentation defense.

Tenn. R. Civ. P. 8.03 requires that the pleadings affirmatively set forth affirmative defenses, including fraud, in plain and simple terms. Tenn. R. Civ. P. 9.02 provides:

> **Fraud, Mistake, Condition of the Mind**. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Generally, the existence of fraud is a question of fact, and the facts must show an intent to deceive on a material matter. *Womack v. Blue Cross and Blue Shield,* 593 S.W.2d 294 (Tenn.1980). There is no duty for the courts to create a claim or defense which has not been spelled out in the pleadings. *Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn. Ct. App. (Tenn. 1977)).

As a rule, appellate courts will not entertain a defense on appeal which was not presented in the trial court. *Alumax Aluminum Corp v. Armstrong Ceiling Systems,* 744 S.W.2d 907, 910 (Tenn. Ct. App. 1987). Holmes did not properly raise the theory in the Trial Court he now asserts on appeal.[2]

The record establishes that the issue before the Trial Court was whether there was material evidence in the record that Holmes intended to sign the continuing guaranty in a representative capacity. Appellant points out that the opinions of *Cone Oil Co. v. Green*, 669 S.W.2d 662 (Tenn. Ct. App. 1983) and *Campora v. Ford*, 2003 WL 1610876 (Tenn. Ct. App. Mar. 28, 2003) cited in the Trial Court's Order, discuss the admissibility of parol evidence with respect to a signatory's intent for purposes of determining whether a document is ambiguous. In each of those opinions fraud in the inducement was not raised, and obviously the Trial Court cited these opinions in response to defendant's argument that he signed the document in his representative capacity. Holmes did not

---

[1]The record shows that Holmes signed his name to the document and subsequently his accountant advised him to add "C.E.O."

[2]Assuming *arguendo* defendant had raised this issue in the Trial Court, there is no material evidence to constitute fraud in the inducement.

express his intention not to be personally bound when he signed the guaranty.[3]

Ron Williams went over each individual document with Holmes, and he had opportunity to read each and ask any questions. Anderson, his financial advisor, had previously reviewed the documents for him, and counseled it was ok to sign them. The fact that Holmes added "CEO" after his signature does not transform an otherwise unambiguous instrument into an ambiguous one. "Undersigned guarantor" is not ambiguous. An examination of the signature line "guarantor" identifies who would be the "undersigned guarantor." The fact that Holmes' added "CEO" after his name does not alter the plain wording of the document. As stated in *Cone Oil:* "It is possible for an officer of a corporation to avoid personal liability by signing his name and adding his title *and the name of the corporation.* However, even such a signature does not produce the presumptive effect. . ." *Cone Oil,* 669 S.W.2d at 665. Holmes neither added the corporate name nor any words such as "by" or "per" or similar indicia of representative capacity. The mere addition of "CEO" is simply a description or identification of the individual signing the document, not the designation of capacity.

The issues raised by defendant are without merit, and for all of the foregoing reasons, we affirm the Judgment of the Chancery Court, and remand, with the cost of the appeal assessed to Pat Holmes.

_____
HERSCHEL PICKENS FRANKS, J.

---

[3]Homes' argument that he signed a continuing guaranty and not a personal guaranty is misplaced. These are not mutually exclusive terms. A continuing guaranty is one which is not limited to a particular transaction or a specific transaction, but which is intended to cover future transactions, until revoked. *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801 (Tenn. 1975); *Third Nat. Bank*, 626 S.W.2d at 467.