FILED
08/20/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2024 Session

## RON JOBE ET AL. V. ERIE INSURANCE EXCHANGE

**Appeal from the Circuit Court for Sullivan County**
**No. C41782      Katherine Leigh Priester, Chancellor**

_____

**No. E2023-01157-COA-R3-CV**
_____

This is a dispute over homeowner's insurance coverage. The trial court granted summary judgment to the insuror, finding that the insureds made a misrepresentation on their application for insurance which voided the policy pursuant to Tennessee Code Annotated section 56-7-103. Because whether the insureds made a misrepresentation is a question of fact for the jury in this case, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

K. Jeffrey Luethke, Kingsport, Tennessee, for the appellants, Ron Jobe and Ruth Jobe.

S. Morris Hadden and Will A. Ellis, Kingsport, Tennessee, for the appellee, Erie Insurance Exchange.

## OPINION

### BACKGROUND

This case arises out of a dispute over homeowner's insurance coverage between Ron and Ruth Jobe (together, the "Jobes") and Erie Insurance Exchange ("Erie"). In approximately 2006, the Jobes built a new home in Kingsport, Tennessee. Shortly after completion, the Jobes moved into the home and noticed small cracks in the drywall seams inside the home. They also noticed small fissures in the brick mortar on the home's exterior, as well as soil settling around certain exterior portions of the home. The Jobes believed these issues were potentially related to a sinkhole. At this point in time, the Jobes

had homeowner's insurance through GuideOne, which they had obtained through a local agency called Price and Ramey. In 2008, the Jobes submitted a claim to GuideOne related to the above-noted issues. GuideOne hired an engineer to conduct soil testing and investigate the claim. The engineer's report, which was signed on November 19, 2008, concluded that the soil under the home was not affected by a sinkhole and that the problems along the front of the home stemmed from "differential soil settlement." The report further provided that the settlement was "near its completion" and that if additional movement did not occur within the next year, the Jobes could perform aesthetic repairs to the affected areas. The report also stated that if additional movement occurred, "foundation repair methods should be implemented."

On December 23, 2008, GuideOne denied the Jobes' claim, citing in part the engineering report, which GuideOne attached to its denial letter. The denial letter summarized the report and concluded that the occurrence "does not fall under the definition of Sinkhole Collapse as defined by the [GuideOne homeowner's] policy." According to their deposition testimony, the Jobes did not take immediate action because they trusted the engineering report. Instead, the Jobes waited to see if the settling would stop. However, the issues persisted, and the Jobes eventually hired a company called Master Dry to raise and stabilize the foundation with helical piers.[1]

On July 12, 2012, Mrs. Jobe met with Rhonda Hutchins, an agent with the Roller Insurance Agency, Inc. in Kingsport, Tennessee to apply for homeowner's insurance from Erie. This required Mrs. Jobe to complete a HomeProtector Application TN form provided by Erie. As characterized by Erie, Mrs. Jobe "was assisted in filling out the [application] by Ms. Hutchins and Erie's auto-population software." The pertinent part of the application is reproduced below:

| | Yes/No |
|---|---|
| A: Have you ever had similar insurance on this or any other property during the past 5 years with any company other than the ERIE? | No |
| B: Has any company declined, cancelled or refused to renew any similar insurance (Non-Pay cancellation or previous carrier request that coverage be purchased from another company is the same as being cancelled or declined)? | No |
| C: Has the Applicant had any loss, such as fire, windstorm, theft, liability, etc... on this or any other property during the last 5 years? | — |

If Yes, please describe loss, including date, amount, place, cause, etc...

DATE: 04/27/2011   AMOUNT: $2,214   LIABILITY LOSS: No   COMPANY: CINCINNATI
   DESC: HAIL - CAT LOSS DURING STORM

DATE: 07/10/2008   AMOUNT: $3,567   LIABILITY LOSS: No   COMPANY: CINCINNATI
   DESC: LAE

---

[1] The exact timeline of when the Jobes hired Master Dry and completed the foundation repairs is not clear from the record. At their 2020 depositions, however, the Jobes confirmed that the issue had been fixed.

Question C is primarily at issue in this appeal. It is undisputed that the application does not define "loss" and that the two claims listed as answers to question C were automatically populated by Erie's software. Ms. Hutchins testified during a deposition that she does not recall whether she asked Mrs. Jobe if those claims were correct, nor does she recall whether she asked Mrs. Jobe if there were any additional claims. Mrs. Jobe signed the completed application on behalf of the Jobes, including a certification providing that "I have given true and complete answers to the questions in this application." Erie then issued a homeowner's insurance policy to the Jobes.

On December 23, 2014, the Jobes filed a claim on the Erie policy "for sinkholes that had been discovered beneath the property resulting in the front of the home sinking several inches[.]" Erie denied this claim on June 30, 2015, writing: "The damage to your home is the result of settlement of soil and ground movement which is not covered under the policy." On February 2, 2017, the Jobes filed a complaint against Erie in the Sullivan County Circuit Court (the "trial court") claiming that Erie's denial of their claim was a breach of the policy and seeking compensatory damages. Erie filed an initial motion for summary judgment on April 8, 2019, arguing that it was entitled to judgment as a matter of law because there was no evidence that a sinkhole caused the Jobes' property damage. Following additional discovery, Erie filed a second motion for summary judgment on August 12, 2022, arguing that the Jobes made misrepresentations on their application, which increased Erie's risk of loss and voided any coverage under the policy. Specifically, Erie argued that the Jobes' response to question C was a misrepresentation because they failed to disclose the earlier claim related to the potential sinkhole, which Erie argues is a "loss."

The trial court heard argument on Erie's second motion on May 19, 2023. At the end of the hearing, the trial court stated that it had an issue with "[w]hether the answer given was false because how can the [c]ourt determine that the answer was false if [it] do[es]n't have a proper definition for loss." The trial court then asked the parties' counsel "to present some case law, if [they could] find anything" on that limited issue. Following additional briefing by the parties regarding what constitutes a "loss" as contemplated by the application, the trial court granted Erie's second motion for summary judgment. In pertinent part, the trial court found:

> Merriam-Webster defines "loss" as "destruction or ruin" and "decrease in amount, magnitude, value or degree." https://www.merriam-webster.com/dictionary/loss. The Eleventh Edition of Black's Law Dictionary defines "loss" in pertinent part as "an undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way." *Black's Law Dictionary* (11th Edition 2019). [Erie] points to a prior edition of Black's Law Dictionary which defines "loss" as the "depletion or destruction of value; deprivation; destruction" or "that which is gone and cannot be recovered or that which is gone and cannot

be recovered [sic] or that which is withheld of that of which a party is dispossessed." *Black's Law Dictionary* (6th ed. 1990).

\* \* \*

> In this case, the [c]ourt finds that the Application for homeowner's insurance coverage completed by the [Jobes] in 2012 specifically asked whether "the *Applicant* had suffered a loss...on this property...in the last 5 years." The [c]ourt finds that based upon a plain language reading of this question, and giving the term "loss" its usual, natural and ordinary meaning, "loss" would include the damage to the house from settling or other causes that was not compensable. The fact that the [Jobes] bore the expense instead of the insurance company, based on lack of coverage, doesn't signify that there was no damage, destruction or diminution in value. Accordingly, the [c]ourt finds that the [Jobes'] failure to provide information concerning the 2008 claim with Guide[]One in their Application for homeowner's insurance with [Erie] constitutes a misrepresentation pursuant to Tenn. Code Ann. § 56-7-103.

The trial court also found that the Jobes' failure to include the prior "loss" on the application was "a misrepresentation that increases the risk of loss within the meaning of Tenn. Code Ann. § 56-7-103." Therefore, the trial court found that the misrepresentation rendered the policy void as a matter of law and dismissed the action. The Jobes timely appealed to this Court.

## ISSUES

The Jobes present the following issues on appeal, which we restate slightly:

1. Whether the trial court erred in dismissing the case and finding that there is no genuine issue of material fact and that Erie is entitled to judgment as a matter of law?

2. Whether the trial court erred in determining that the Jobes provided false answers in the application when Erie had actual knowledge of the correct answer before issuing the policy?

3. Whether the trial court erred in determining that the Jobes had in fact suffered a prior "loss"?

4. Whether the trial court erred in determining the definition of the term "loss" to include those matters requested by Erie in the application notwithstanding the significant testimony and argument to the contrary.

- 4 -

This case was resolved by summary judgment. A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

DISCUSSION

While the Jobes raise four issues on appeal, the essence of their argument is that the trial court erred in granting summary judgment to Erie because there is a genuine dispute

of material fact regarding whether the Jobes made a misrepresentation when completing their application for insurance.

Tennessee Code Annotated section 56-7-103, which deals specifically with insurance applications, provides as follows:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

The statute's requirements are conjunctive; that is, to avoid coverage, an "insuror must *first* prove that the answers in the application were false; then it must prove either that the false answers were given with intent to deceive the insuror or that the false answers materially increased the risk of loss." *Womack v. Blue Cross & Blue Shield of Tenn.*, 593 S.W.2d 294, 295 (Tenn. 1980) (emphasis added). "[T]he concept of 'misrepresentation' is totally distinct and separate from the concepts of 'intent to deceive' or 'increase in the risk of loss[,]'" and "[t]he latter elements are not analyzed at all until and unless a matter has been 'misrepresented.'" *Gatlin v. World Serv. Life Ins. Co.*, 616 S.W.2d 606, 608 (Tenn. 1981). An affirmatively false statement or a material omission may amount to a misrepresentation. *Ireland v. Tenn. Farmers Life Ins. Co.*, No. M2021-01360-COA-R3-CV, 2022 WL 16635166, at *4 (Tenn. Ct. App. Nov. 2, 2022), *perm. app. denied*, (Tenn. Feb. 8, 2023) (citing *First Tenn. Bank Nat'l Ass'n v. U.S. Fid. & Guar. Co.*, 829 S.W.2d 144, 147 (Tenn. Ct. App. 1991)).

It is well settled that whether an insured has made a misrepresentation in an application for insurance is a question for the trier of fact. *Womack*, 593 S.W.2d at 295; *see also Gatlin*, 616 S.W.2d at 608; *Hamlin v. Allstate Ins. Co.*, No. 03A01-9211-CV-00406, 1993 WL 191988, at *3 (Tenn. Ct. App. June 8, 1993); *Ireland*, 2022 WL 16635166, at *4. When a jury is demanded, the question "cannot be taken from them and decided by the trial judge unless the minds of reasonable men could reach only one conclusion as to whether the answers were true or false." *Womack*, 593 S.W.2d at 295. However, before determining whether a misrepresentation was made, "the fact finder must determine what the insurer asked, required, or expected the applicant to represent in order to decide whether a matter has been misrepresented." *Hamlin*, 1993 WL 191988, at *3 (citing *Gatlin*, 616 S.W.2d at 608). The burden is "clearly placed on" the insuror to establish a misrepresentation defense. *McDaniel v. Physicians Mut. Ins. Co.*, 621 S.W.2d 391, 393 (Tenn. 1981). In that vein, cases in which the court has decided the issue of misrepresentation at the summary judgment stage tend to be cases in which the misrepresentation is made in the face of a clear, unambiguous question. *See, e.g.*, *Ireland*, 2022 WL 16635166, at *1 (summary judgment on issue of misrepresentation affirmed

- 6 -

where insured had been diagnosed with steatosis of the liver but answered "No" to a question asking whether he had "ever been treated for or ever had any known indication of . . . disorder[s] of the . . . liver"); *Conley v. Tenn. Farmers Ins. Co.*, No. W2017-00803-COA-R3-CV, 2018 WL 3561725, at *2 (Tenn. Ct. App. July 24, 2018) (insured's claim disposed of at summary judgment stage where she was asked in her application whether she "[e]ver had any property in foreclosure?" and she answered "No," when in fact she owned property that was foreclosed two years prior).

Against this backdrop, the pertinent question is whether the Jobes made a misrepresentation on their Erie insurance application regarding their home's foundation issues. This question must be answered before the rest of the statute's requirements may be addressed. *Gatlin*, 616 S.W.2d at 608. Under the unique circumstances of this case, we conclude that Erie did not satisfy its burden that the Jobes made a misrepresentation on their insurance application and that a genuine dispute of material fact remains. Because this question may only be taken from the jury when "the minds of reasonable men could reach only one conclusion as to whether the answers were true or false[,]" *Womack*, 593 S.W.2d at 295, this question must be left to the trier of fact.

Several issues in the record lead us to this conclusion. First, the Erie application asked, "Has the Applicant had any loss, such as fire, windstorm, theft, liability, etc. . . on this or any other property during the last 5 years?" The application then states, "If Yes, please describe loss, including date, amount, place, cause, etc. . ." Underneath this question, two answers appear. The first answer appears to arise from a hailstorm occurring in 2011, while the second answer features only the description of "LAE" and the date July 10, 2008. Interestingly, 2008 is approximately when the Jobes began reporting their foundation issues to their previous insurance company; indeed, the engineering report commissioned by GuideOne was completed on November 19, 2008, and GuideOne denied the Jobes' claim on December 23, 2008. The record shows that neither the Jobes nor Ms. Hutchins was sure what "LAE" means or what the 2008 claim is related to. Thus, at the very least, the application shows that the Jobes made some sort of claim around this time.

There are also unresolved questions surrounding Mrs. Jobe's execution of the application. For instance, Ms. Hutchins, the agent who helped Mrs. Jobe complete the application, testified that the answers at issue were computer-generated by the agency's software. According to Ms. Hutchins, the software she was using at the time could pull the applicant's claim history, and if a claim had been made, the software would find it. Ms. Hutchins further testified that she could not recall whether she asked Mrs. Jobe about any prior losses or whether the Jobes had prior losses not automatically populated by the software. Inasmuch as Ms. Hutchins could not recall what she asked Mrs. Jobe about the Jobes' prior losses, this casts doubt on whether Mrs. Jobe made a misrepresentation here. To be clear, Mrs. Jobe was "ultimately responsible for ensuring that [the] insurance application contained truthful information." *Jesmer v. Erie Ins. Co.*, No. 21-5186, 2021 WL 4473396, at *5 (6th Cir. Sept. 30, 2021) (citing *Giles v. Allstate Ins. Co., Inc.*, 871

S.W.2d 154, 157 (Tenn. Ct. App. 1993)). We are not suggesting that it was Ms. Hutchins' responsibility to somehow ensure the veracity of Mrs. Jobe's application. *Id.* However, we must balance that principle with the notion that before an insuror can satisfy its burden for mounting a misrepresentation defense, the fact finder must determine "what the insurer asked, required, or expected the applicant to represent." *Gatlin*, 616 S.W.2d at 608. Accordingly, we only note Ms. Hutchins' testimony to highlight the patina of confusion surrounding the disputed portion of the application. In viewing the evidence in the light most favorable to the Jobes, which we are required to do at this juncture, we cannot say with clarity under these particular circumstances what Erie was asking for, required, or expected.

This leads us to the final and most significant issue creating a genuine dispute, which is whether the Jobes' foundation issues could reasonably be considered a "loss" at the time Mrs. Jobe completed the application. As the trial court noted, what constitutes a "loss" is central to this case because depending upon how that term is defined, Mrs. Jobe did or did not make a misrepresentation when completing the application. And as addressed at length above, this threshold inquiry, typically reserved for the jury, must be resolved before Erie may avail itself of a defense under section 56-7-103. *Gatlin*, 616 S.W.2d at 608.

Here, the application does not define "loss," nor is there any indication in the record that Ms. Hutchins provided further explanation to Mrs. Jobe as to what amounts to a loss. The Jobes' position is that they did not understand their foundation issues to be a "loss" in this context at the time Mrs. Jobe completed the application because the Jobes' claim about the settling had been denied. Moreover, the engineer who inspected the Jobe home in 2008 told the Jobes that the settling was near completion and could eventually stop. While the Jobes eventually paid for significant foundation repairs to their home, it is unclear from the record whether they had already undertaken those repairs at the time Mrs. Jobe filled out the Erie insurance application. The Jobes testified that they trusted the initial engineering report and waited for a period of time to see if the settling would cease and mere aesthetic repairs could be completed.

In response, Erie maintains that the Jobes conflate the idea of a "loss" with a covered and paid-out insurance claim. According to Erie, the definition of loss is much broader and includes any damage to property which depreciates property and deprives the owner of the full value thereof. Erie cites a Mississippi Supreme Court case in which that Court "had to decide when a loss vests." Erie opines that "[u]ltimately, the Court concluded that a 'loss occurs at that point in time when the insured suffers deprivation of, physical damage to, or destruction of the property insured.'" *Corban v. United Services Auto. Ass'n*, 20 So.3d 601, 613 (Miss. 2009).

While Erie makes a logical point, we cannot conclude that under these circumstances "the minds of reasonable men could reach only one conclusion as to whether the answers were true or false." *Womack*, 593 S.W.2d at 295. Even adopting Erie's

proposed definition of loss, it still cannot be said with certainty that when Mrs. Jobe completed her application, the Jobes had suffered a depreciation in value of their home substantial enough to consider it a "loss." Given the presumption that this question should be left to the jury unless reasonable minds can reach only one conclusion, we hesitate to adopt Erie's argument; taken to its logical extension, Erie's position means that essentially *any* issue with a home must be considered a loss. This is too bold a line to draw at the summary judgment stage.

Rather, under the very unique circumstances of this particular case, we conclude that whether Mrs. Jobe made a misrepresentation on the Erie application is an issue of fact that should be left to a jury. We reach this conclusion having viewed the evidence in the light most favorable to the Jobes, as we must, and keeping in mind that "[section] 56-7-103 'generally favors the validity of insurance contracts. . .'" *Williams v. Tenn. Farmers Life Reassurance Co.*, No. M2011-01946-COA-R3-CV, 2012 WL 3104924, at *3 (Tenn. Ct. App. July 31, 2012) (quoting *Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011)). Accordingly, the trial court's judgment granting Erie summary judgment is reversed, and this case is remanded for further proceedings.

## CONCLUSION

The judgment of the Circuit Court for Sullivan County is reversed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to Erie Insurance Exchange, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE