**William SPELLMEYER and Wilma Spellmeyer, Plaintiffs/Appellees,**

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 30, 1993.

Application for Permission to Appeal Denied by Supreme Court May 16, 1994.

Jere B. Albright, Humboldt, for defendant/appellant.

James H. Bradberry, Bradberry, Crowe, MacLeod & Gearin, Dresden, for plaintiffs/appellees.

FARMER, Judge.

William and Wilma Spellmeyer sued Tennessee Farmers Mutual Insurance Company (Tennessee Farmers) to recover under a homeowners policy following a fire loss at their residence. Tennessee Farmers answered denying that it was indebted under the policy and alleged that the Spellmeyers willfully and intentionally failed to comply with the terms and conditions of the policy; that they failed and refused to furnish the necessary information for the processing of the claim; and that they directly or indirectly participated in the intentional setting of the fire. An order was entered allowing Tennessee Farmers to amend their answer by adding the following:

> The [Plaintiffs] further made certain misrepresentation on the application for insurance in that they denied that they had experienced a previous fire, they denied that any company had ever rejected, cancelled or refused to renew insurance and they gave an erroneous date of purchase as being 1989, not 1988 which misrepresentations were made with the actual intent to deceive, and/or the matters misrepresented increased the risk of loss.

The jury returned a verdict in favor of the Spellmeyers. The verdict included prejudgment interest and a bad faith penalty.

Appellant presents the following issues for our review:

I. Did the trial court err in not granting Defendant's–Appellant's motion for directed verdict at conclusion of all proof based on certain misrepresentations in the application for insurance?

II. Did the trial court err in failing to properly instruct the jury as to the law of misrepresentation?

III. Did the trial court err in applying the law of misrepresentation to the facts presented at trial?

IV. [Were] the facts sufficient to support a finding of bad faith on the part of Defendant–Appellant or to submit the question thereof to the jury?

Appellees present the following additional issue:

1. Whether the Appellant is estopped from raising the policy defense of misrepresentations made on the policy application where Appellant, with full knowledge of all facts, first denied Appellees' claim on the ground that Appellees failed to cooperate with the Appellant's investigation and evaluation of the insurance claim and did not raise the issue of misrepresentation of certain facts until just prior to trial, two years later.

Since Tennessee Farmers' argument on appeal focuses on the defense of misrepresentation, we first address the position taken by Appellees that Tennessee Farmers is estopped to assert the defense. The Spellmeyers claim that Tennessee Farmers is estopped because this defense was not raised until just prior to trial (in a motion to amend its answer) and two years after the Spellmeyers' examinations under oath which revealed inconsistencies with the answers given in the application for insurance. We find Appellees' assertion without merit in view of counsel's concession at oral argument that the amendment was by stipulation of the parties.

We will next address Appellant's second issue concerning the trial court's failure to properly instruct the jury on the issue of misrepresentation as we deem it dispositive of this appeal. As heretofore noted, the amended answer raised the defense that the misrepresentations were made with the in-

tent to deceive and/or the matters misrepresented increased the risk of loss. Counsel for Appellant timely raised this issue with the trial court, as hereinafter addressed more specifically, and likewise raised this issue in the motion for a new trial.

The application for insurance, dated January 27, 1989, asked the following questions pertinent to this appeal:

(1) Either applicant ever had any fire, theft or liability loss whether or not insured?

(2) Has any Company rejected, cancelled, or refused to renew? Attach copy of letter.

. . . .

(13) Date of purchase _____.

The first two questions were answered "no" and "1989" was listed as the date of purchase. Mrs. Spellmeyer testified that she signed the application. The Spellmeyers concede the answers are incorrect, but insist the misstatements do not void the policy because they were not made with intent to deceive nor do they materially increase the risk of loss.

In the examination under oath of Mrs. Spellmeyer, she revealed that she moved into the home in October 1988. At trial, she testified that the deed to the property is dated October 26, 1988, but that the deed was not recorded until March 4, 1989. She further testified that she and her husband did not receive the deed prior to March 1989. The examination also revealed that the Spellmeyers first sought homeowners insurance from State Farm Insurance Company. Mrs. Spellmeyer stated that a check was presented to State Farm, but later returned. At trial, Mrs. Spellmeyer testified that State Farm informed her, by letter, that it was cancelling the insurance policy due to the fact that the home was located "too far from a metropolitan area." When Mr. Spellmeyer

was examined under oath, he stated that he sustained a previous fire loss to an "outbuilding" in the mid 1970's.[1] Mrs. Spellmeyer testified at trial that at the time the application was completed, she was unaware of the fire loss which occurred prior to their marriage.

Vicky Knight, the manager of the Properties Underwriting Department at Tennessee Farmers testified that the question as to whether either applicant has sustained any fire, theft or liability loss, is material in deciding whether or not to accept an application for insurance, as "[p]revious fire losses [gives Tennessee Farmers] an opportunity to see or try to project what [its] risk is going to be in the future." She further testified that the question as to whether any other company has cancelled, rejected, or refused to renew an insurance policy is material, stating:

Well, the underwriter can't make the decision on whether to accept it or not if there is misinformation here. If we're given a yes answer, then we ask for a copy of the letter because what we're looking for is the reason for the cancellation or rejection or refusal to renew.

Finally, she stated that the date of purchase is material in the insurance company's decision making process to accept or reject an application as it could indicate a problem with obtaining insurance, if the home was owned by the applicants for a period of time without insurance.

At the close of the Spellmeyers' proof, Tennessee Farmers' motion for a directed verdict was denied. At the close of all proof, the motion was renewed and again denied.

T.C.A. § 56–7–103 provides:

**Misrepresentation or warranty will not avoid policy—Exceptions.**—No written or oral misrepresentation or warranty therein made in the negotiations of a contract or

1. Mr. Spellmeyer stated that the outbuilding was not an attachment to the house, but a "back building" that he had finished a week before the fire for his children to use "as their room." He stated that the building was insured but does not remember whether he reported the incident. He estimated the total damages at $1,300.

policy of insurance, or in the application therefor, by the assured or in his behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

This statute (formerly T.C.A. § 56–1103) was addressed in *Womack v. Blue Cross & Blue Shield of Tennessee*, 593 S.W.2d 294 (Tenn.1980):

The law applicable to the issue of misrepresentation in an application for insurance is well settled in Tennessee. . . .

. . . .

Under this statute, to avoid coverage the insuror must first prove that the answers in the application were false; then it must prove either that the false answers were given with intent to deceive the insuror or that the false answers materially increased the risk of loss.

Whether the insured's answers to the questions on the application are true or untrue is to be determined by the trier of fact and when a jury is demanded, cannot be taken from them and decided by the trial judge unless the minds of reasonable men could reach only one conclusion as to whether the answers were true or false. The same is true if the insuror claims that false answers were made with intent to deceive. When only these two issues are raised the jury may properly return a general verdict. However, if the insuror claims that the false answers materially increased the risk of loss a question of law arises. *Mutual Life Ins. Co. v. Dibrell*, 137 Tenn. 528, 194 S.W. 581 (1917); *Nicholson v. Time Ins. Co.*, 496 S.W.2d 516 (Tenn.App.1973); *Tegethoff v. Metropolitan Life Ins. Co.*, 57 Tenn.App. 695, 424 S.W.2d 565 (1966); *Sloop v. Mutual of Omaha Ins. Co.*, 55 Tenn.App. 656, 404 S.W.2d 265 (1965).

*Womack*, 593 S.W.2d at 295.

■ The fact that an insured has made a misrepresentation in the application for insurance does not necessarily mean that the policy is void. *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327 (Tenn.App.1985). The misrepresentation must increase the risk of loss to the insurer. *Clingan*, 694 S.W.2d at 330. Otherwise stated, the matter misrepresented must "naturally and reasonably" influence the judgment of the insurer in making a contract. *Id.* The insured has a duty to disclose information which is material to the risk involved. Whether undisclosed information is material is a question of law for the court. *Id.* However, at this point our concern is whether the jury was instructed to determine whether false answers were given with an intent to deceive.

■ As stated in *Rule v. Empire Gas Corp.*, 563 S.W.2d 551 (Tenn.1978):

Rule 51.02 does permit a party to allege error in his motion for a new trial based upon (1) inaccuracy of the charge as given or (2) failure to give a requested appropriate instruction, although no objection or exception in this respect was made at the trial; but we find nothing in the rule which relieves trial counsel of the burden of requesting an instruction to cover alleged omissions in the instructions as given.

*Rule*, 563 S.W.2d at 553.

The rule in Tennessee is that the trial court should instruct the jury upon every issue of fact and theory of the case raised by the pleadings and supported by the proof. *Street v. Calvert*, 541 S.W.2d 576 (Tenn.1976). More specifically, where a special instruction that has been requested is a correct statement of the law, is not included in the general charge, and is supported by the evidence introduced at trial, the court should give the instruction. *Tennessee Farmers Mut. Ins. Co. v. Hinson*, 651 S.W.2d 235 (Tenn.App.1983). When the denial of a request which ought to have been given prejudices the rights of the requesting party, the judgment should be reversed. *Nashville C. & St. L. Ry. Co. v. Jackson*, 187 Tenn. 202, 213 S.W.2d 116 (1948).

*Underwood v. Waterslides of Mid–America*, 823 S.W.2d 171, 178 (Tenn.App.1991).

■ Following delivery of the jury instructions, the trial court inquired if there was anything further of the parties. Whereupon, the following exchange between the court and Appellant's counsel occurred:

MR. ALBRIGHT: And, also, Your, Honor, I may have overlooked this, but I don't recall your charging the jury as to misrepresentation, as increasing the risk, whether or not it was material, whether or not there was a misrepresentation made. It is our position that whether misrepresentation was made is a question of fact. It is our—

THE COURT: Misrepresentation on the loss, or on the—

MR. ALBRIGHT: On the application.

THE COURT: Okay. And what's the instruction that you're requesting?

MR. ALBRIGHT: I'm requesting the instruction is [sic] that the jury is to simply be charged that it's their duty to find, as a matter of fact, whether or not the application contains misrepresentations therein. And you could say, under the policy of insurance, misrepresentation—

THE COURT: I think that was given to them in the charge about three different times.

MR. ALBRIGHT: Was it? I'm just saying I don't recall it, but I do think that the matter of whether or not it increased the risk, and whether or not it was a material misrepresentation, is a question of law. I'm not waiving my position on that—

THE COURT: I didn't charge them on that issue.

MR. ALBRIGHT: No, sir.

THE COURT: Let the record show, I'll stand on the charge as given.

MR. ALBRIGHT: All right, sir.

It is apparent that submission of a written instruction by Appellant's attorney would have been futile at that point. This issue was first addressed by the eastern section of this Court in *Owen v. Arcata Graphics/Kingsport Press,* 813 S.W.2d 442 (Tenn. App.1990) wherein Judge Sanders wrote for the court as follows:

We first address Appellant's insistence it was error for the court to refuse to charge the jury on the issue of assumption of the risk. At first blush it would appear our holding on this issue is in direct contravention of *Rule v. Empire Gas Corporation,* 563 S.W.2d 551 (Tenn.1978), where our supreme court held Rule 51.02, T.R.Civ.P., did not abolish or alter the rule "that in order to predicate error upon an alleged omission in the instructions given to the jury by the trial judge he must have pointed out such omission to the trial judge at trial by an appropriate request for instruction," in that no written request was presented to the court by the Appellant. We do not consider our holding to be in derogation of *Rule,* but rather an exception to it, in that to have submitted a written request under the circumstances of this case would have been an idle act....

....

By the court's having told counsel for the Appellant, during a brief respite of the jury just prior to instructing the jury, that he would not instruct the jury on assumption of the risk and, "I felt it would be in error if I charged it," it certainly would have been an idle and futile act, in fact almost contemptuous, for counsel to [proffer] such a written request at that time. The only jurisdiction in which we have found a case which has addressed this specific issue is California, in the case of *Hudspeth v. Jaurequi,* 44 Cal.Rptr. 428, 429, 234 Cal.App.2d 526 (1965). In *Hudspeth,* counsel had requested a charge on res ipsa loquitur. He was told by the court he did not think the doctrine was applicable under the proof in the case. Toward the end of the trial counsel orally renewed his request. The court reaffirmed the view expressed in the trial. Upon appeal, appellee took the position there was no error because appellant had failed to submit an instruction meeting the rule

in *Seneris v. Haas,* 45 Cal.2d 811, 291 P.2d 915. The district court of appeals did not agree. In reversing the trial court, the court of appeals said: "Proffering a written instruction under the circumstances would have been an idle act, and failure to perform an idle act does not constitute a waiver of a legal right. (Civ.Code s 3532; *Robinson v. Puls,* 28 Cal.2d 664, 667, 171 P.2d 430.)"

The specific issue before us has not been directly addressed in this jurisdiction, nor do we have a statute which governs, but in the case of *Overholt v. Merchants & Planters Bank,* 637 S.W.2d 463 (Tenn.App.1982) our court said:

> It is well settled in this jurisdiction that "... a tender is unnecessary when it is reasonably certain that the tender will be refused." *Greener & Sons v. Southern Ry. Co.,* 155 Tenn. 486, 290 S.W. 988 (1927); *Cox v. Equitable Life Assur. Soc. of U.S.,* 22 Tenn.App. 311, 122 S.W.2d 823 (1938).

> There is a well-recognized common law maxim that "the law will not indulge in idle formalities, or do vain or futile acts." 15–A C.J.S. Common Law § °14 pp. 68, 69.

*Owen,* 813 S.W.2d at 445–46.

We have thoroughly reviewed the jury instructions and determined that the issue raised by Appellant has merit. At no point was the jury instructed that they were to determine whether the false statements on the application were given with an intent to deceive. As noted in *Womack v. Blue Cross Blue Shield,* this is a question of fact to be determined by the trier of fact.

A misrepresentation on an application voids the policy if it is made with actual intent to deceive. Had the jury been instructed on this issue, a verdict that misrepresentations were made with actual intent to deceive would have voided the policy and resulted in a verdict for the defendant. We hold that it was prejudicial not to instruct the jury upon this issue and in denying Defendant's motion for a new trial.

In view of our remand, we find the following language from *Womack v. Blue Cross & Blue Shield* at 295 instructive: "The jury may determine whether the answers were false and, if so, whether there was intent to deceive, but only the trial judge may determine whether false answers materially increased the risk of loss. The use of a special verdict is appropriate in this situation. *See* T.R.C.P. 49.01."

The remaining issues are pretermitted. The case is remanded for a new trial and the costs of this appeal are taxed to the Appellees and their surety, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.