IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 25, 2011 Session

## WILLIAM W. STEBBINS v. FUNDERBURK MANAGEMENT COMPANY, LLC, ET AL.

### Appeal from the Circuit Court for White County
No. CC1784     Amy V. Hollars, Judge

---

### No. M2011-00068-COA-R3-CV - Filed October 26, 2011

---

Restaurant patron who was served food in which he found a tooth sued the restaurant for negligence, strict liability, breach of warranty, and violation of the Tennessee Consumer Protection Act. He sought compensatory and punitive damages. At trial, the court granted a directed verdict to defendant on the punitive damages and Consumer Protection Act claims and denied plaintiff's special request that the court instruct the jury that recoverable damages for mental and emotional distress could also include anxiety or concern for others. Plaintiff appeals the grant of the directed verdicts and the failure to give the requested instruction. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeals as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

David Day and Benjamin D. Marsee, Cookeville, TN, and Elizabeth McDonald, Sparta, TN, for the appellant, William W. Stebbins.

Daniel W. Olivas, Nashville, Tennessee, for the appellee, Funderburk Management Company, LLC.

**OPINION**

**I. Background**

On August 23, 2005, William Stebbins was eating biscuits and gravy at a McDonald's restaurant in Sparta, Tennessee, when he bit into a metal-crowned tooth. Mr. Stebbins immediately became ill and vomited and later sought testing for HIV and hepatitis at the

White County Health Department; the results of the tests showed that he had not contracted either disease.

Mr. Stebbins filed a civil warrant *pro se* against Funderburk Management Company, LLC d/b/a McDonald's Restaurant, and/or FunMac Associates, Inc., d/b/a McDonald's Restaurant ("Funderburk") in White County General Sessions Court. He sought $1,000 in damages arising out of the incident plus court costs. Mr. Stebbins later retained counsel and filed motions to amend the civil warrant and to transfer the case to the Circuit Court for White County. The motions were granted by Agreed Order, and the warrant was amended to include claims for negligence, strict liability, breach of warranty, and violation of the Tennessee Consumer Protection Act. Mr. Stebbins also increased his request for compensatory damages to $35,000 and added a claim for $500,000 in punitive damages. Funderburk answered and denied Mr. Stebbins' allegations.

The case was tried before a jury on January 20 and 21, 2010. Before the trial commenced on the second day, the trial court ruled on the parties' requests for jury instructions and denied Mr. Stebbins' request for a special instruction that his claim for emotional distress could include his anxiety and concern for others. At the conclusion of Mr. Stebbins' case in chief, Funderburk moved for a directed verdict on all issues; the court directed a verdict on the claims for punitive damages and violation of the Consumer Protection Act. At the close of all proof, both parties moved for directed verdicts, which the court denied. The case was submitted to the jury, which returned a verdict for Mr. Stebbins in the amount of $5,000.

Mr. Stebbins appeals and raises the following issues:

1. Whether the trial court erred by failing to fully and properly charge the jury with all of the jury instructions requested by the plaintiff concerning emotional distress resulting from anxiety and concern for others.

2. Whether the trial court erred by granting the defendant's motion for directed verdict on the issue of punitive damages.

3. Whether the trial court erred by granting the defendant's motion for directed verdict under the Tennessee Consumer Protection Act.

## II.  Discussion

### *A.  Jury Instruction*

Mr. Stebbins asserts that the trial court erred in denying his request for a special jury instruction because his "testimony makes clear that a substantial part of his emotional distress in this matter arose out of his concern for the welfare of his fellow customers . . . ."  The instruction requested by Mr. Stebbins was as follows:

> Mental and emotional distress can also include the Plaintiff's "natural concern and anxiety for the welfare of [himself]" and others.  *Quoting in pertinent part Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431, 434 (Tenn. 1992).

Our Supreme Court set forth the standard of review of a court's ruling on jury instructions in *Johnson v. Tennessee Farmers Mut. Ins. Co.*:

> A trial court should instruct the jury upon every issue of fact and theory of the case that is raised by the pleadings and is supported by the proof.  *Street v. Calvert*, 541 S.W.2d 576, 584 (Tenn. 1976);  *Spellmeyer v. Tenn. Farmers Mut. Ins. Co.*, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993).  "Where a special instruction that has been requested is a correct statement of the law, is not included in the general charge, and is supported by the evidence introduced at trial, the trial court should give the instruction."  *Spellmeyer*, 879 S.W.2d at 846. . . .  Tennessee courts view the jury charge in its entirety and consider the charge as a whole in order to determine whether the trial judge committed prejudicial error.  *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992).  It is not error to deny a requested instruction if its substance is covered in the general charge.  *Id.* at 445.

*Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 372 (Tenn. 2006).

The trial court charged the jury regarding damages for mental and emotional distress as follows:

> Physical pain and mental suffering.  Physical pain and mental suffering is reasonable compensation for any physical pain and suffering, physical and mental discomfort suffered by the plaintiff.  Physical injury can include illness.  Illness can include vomiting and nausea.  Mental suffering includes anguish,

grief, shame or worry. Damages may be awarded for mental suffering or disturbance, even though the physical injury is minor.[1]
***
In making an award for pain and suffering, loss of enjoyment of life, you should consider -- you shall exercise your authority with calm and reasonable judgment, and the damages you fix shall be just and reasonable in light of the evidence.

The trial court explained its decision to deny Mr. Stebbins's request thusly:

THE COURT: . . . . I thought that request was essentially -- that the content is essentially included within the pattern instruction.

MR. DAY: Your Honor, the only thing that I would add is that the reference to anxiety for the welfare of himself and others is not included in the pattern instruction.

THE COURT: Well, I think anxiety generally is broad enough to -- I mean, there's nothing to prevent you from arguing that, but I don't think that I need to specifically instruct on that.

Mr. Stebbins asserts that the trial court's instruction "indicates Plaintiff's emotional distress from the incident alone—and not anxiety or natural concern for the welfare of others—would be all that would be included or considered for purposes of damages," and that the court should have given the requested instruction "to clarify for the jury that concern for the welfare of others is recoverable under Tennessee law as a part of this element of damages." We do not read the instruction given by the court so narrowly. The language of the instruction is general and permits the plaintiff to recover for any "anguish, grief, shame or worry" that the plaintiff has personally experienced; it does not exclude the possibility that Mr. Stebbins could recover for his anxiety, concern, or worry about the other customers in

---

[1] The instruction given by the trial court is similar to that set forth in the Tennessee Pattern Jury Instructions, which provides:

Physical pain and mental suffering. Physical pain and suffering is reasonable compensation for any physical pain and suffering, physical and mental discomfort suffered by the plaintiff, [and the present cash value for pain and suffering likely to be experienced in the future.] Mental suffering includes anguish, grief, shame, or worry.

Tenn. Pattern J. Instrs. 14.01 (10th ed.).

the restaurant.[2]  The tenor and objective of the requested instruction was included within the general charge, and the trial court properly denied his request.[3]  *Spellmeyer*, 879 S.W.2d at 846; *Otis*, 850 S.W.2d at 445.

When reviewing a jury's verdict, appellate courts begin with a presumption that juries are honest and conscientious, and that the jury has followed the instructions given to it.  *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004); *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998).  Because the instruction given by the court was proper, we presume that the jury considered all of the evidence submitted at trial—including the testimony of Mr. Stebbins that he suffered emotional distress arising out of his concern for others—and that the award of $5,000 reflects the amount the jury considered appropriate for his emotional distress.

## B.  Directed Verdict on Mr. Stebbins's Claim for Punitive Damages

The standard for awarding punitive damages was set forth by our Supreme Court in *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992).  Punitive damages are available in "cases involving only the most egregious of wrongs," and a plaintiff must prove by clear and convincing evidence that the defendant acted either intentionally, fraudulently, maliciously, or recklessly to be entitled to such an award.  *Hodges*, 833 S.W.2d at 901.  A showing of clear and convincing evidence requires "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."  *Id.* at 901 n. 3; *accord Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005).  When ruling on a motion for a directed verdict on a punitive damage claim, a court must determine if there is clear and convincing evidence  to submit the punitive damage claim to the jury.  *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 207 (Tenn. Ct. App. 2008); *accord Hughes v. Lumbermens Mut. Cas. Co.*, 2 S.W.3d 218, 227 (Tenn. Ct. App. 1999); *Wasielewski v. K Mart Corp.*, 891 S.W.2d 916, 919 (Tenn. Ct. App. 1994).  A trial court's grant of a directed verdict is appropriate if the court "determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence."  *Biscan v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005); *Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002).  An appellate court will review a directed verdict motion de novo and will apply the same legal

---

[2]  The record shows that Mr. Stebbins testified regarding his concern for other patrons of the restaurant and that his counsel included references to this concern in his summation to the jury.

[3]  The court's instruction is in accord with our Supreme Court's description of pain and suffering as "encompass[ing] the physical and mental discomfort caused by an injury. . . . [which] includes the 'wide array of mental and emotional responses' that accompany the pain, characterized as suffering, such as anguish, distress, fear, humiliation, grief, shame, or worry.'" *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999) (citations omitted).

standard as the trial court. *Biscan*, 160 S.W.3d at 470; *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 281 (Tenn. 2005). This review requires an appellate court to "take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary." *Cecil v. Hardin*, 575 S.W.2d 268, 270 (Tenn. 1978); *Brown*, 181 S.W.3d at 281; *Childress*, 74 S.W.33 at 328.

Mr. Stebbins contends that he "offered crystal clear evidence of Defendant's reckless conduct." He cites the following testimony of Ms. Ruth Ann Rowan, manager of the restaurant, in support of his claim for punitive damages:

Q. . . . Now, in your capacity as the manager, is it your job to make sure that your biscuit makers and your gravy makers are properly trained in how to prepare the biscuits and gravy?

A. Yes.

Q. And as part of that instruction, do you make sure that you explain to them that they have to constantly be on the lookout for foreign objects that could be in the biscuits or the gravy?

A. Yes.

Q. And do you stress to them that if they don't pay attention to what is being done as they make the biscuits and gravy that that could be harmful to the safety or health of the customers?

A. Right.

Q. And, in fact, do you stress that so much that you make them aware of the fact that if they don't constantly pay attention to make sure there's no foreign objects in there, that that could indicate that they're showing a conscious disregard for the safety of your customers?

A. Yes.

Q. In fact, they have a duty as they're mixing the gravy, as they're making the biscuits, to have their eyes riveted on their work 100 percent of the time; correct?

A. Yes.

Q. And if food got -- if a foreign object got into the biscuits or into the gravy, it would have to be because they are violating your rule about intentionally and consciously watching the food as they're making it, as you understand it; correct?

A. Yes

Mr. Stebbins asserts that "clearer evidence of recklessness would have been all but impossible to obtain," and that the above testimony demonstrated "Defendant's conscious disregard for the safety of its customers."

The testimony of Ms. Rowan does not show that the failure of Funderburk's employees to notice the tooth was anything more than ordinary negligence. Although Ms. Rowan agreed that employees were instructed to "intentionally and consciously" watch food during its preparation and to ensure that foreign objects were not in the food, the mere presence of the tooth in the gravy is insufficient to show that Funderburk or its employees engaged in conduct that was intentional, fraudulent, malicious, or reckless. Mr. Stebbins has presented no evidence showing how the tooth got into the gravy or any other evidence from which the jury could find conduct justifying an award of punitive damages; the court did not err in granting a directed verdict on this issue.

### C. Directed Verdict on Mr. Stebbins's Tennessee Consumer Protection Act Claim

Mr. Stebbins cites to the following testimony of Larry Funderburk, CEO of Funderburk, as evidence that defendant violated the Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b):[4]

---

[4] Mr. Stebbins asserts that the following provisions of the Consumer Protection Act were violated:

(2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services. This subdivision (b)(2) does not prohibit the private labeling of goods and services;
***
(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
***
(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
***
(9) Advertising goods or services with intent not to sell them as advertise;

(continued...)

Q. Now, would you agree that you as McDonald's in this area represents [sic] its food to be of the highest quality?

A. Absolutely.

Q. Would you agree every time that you offer a food product to a customer, you're representing to that customer that that food is fit to eat?

A. Absolutely.

Q. Would you agree that when you are representing to a customer an item of food that you are representing it to be free of foreign objects?

A. Yes.

Q. Would you agree -- would you consider it fair to sell a product that has foreign objects in it?

A. We would not knowingly sell a product with a foreign object in it.

Q. Would you consider it to be fair to sell a product with foreign objects in it?

A. We would not knowingly sell a product with a foreign object in it.

Q. Okay. I appreciate what you say about knowingly, but I'm asking whether you consider that to be fair.

A. I guess I don't understand your question.

---

(...continued)
*** 
(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person;

Tenn. Code Ann. § 47-18-104(b)(2), (5), (7), (9) and (27) (2001 & Supp. 2005). Section 15 of Chapter 510 of the Public Acts of 2011 amended § 47-18-104(b) to vest exclusive enforcement of subsection (27) in the office of the Attorney General and Reporter, effective October 1, 2011.

Q. Sure. I'll rephrase it so you understand it. Do you think it's fair to continue to sell a product to your customers when someone comes in and says, hey, I found something in my food?

A. We immediately correct that situation. As in that batch of gravy, we disposed of that batch of gravy, but we didn't just throw it away. We sifted through it to make sure there was nothing in it as it was being disposed of. We immediately --

Q. I appreciate you volunteering all this information. I asked you whether it was fair. Can you answer a question about whether it's fair -- or would you agree that if you continue to sell the product and you didn't take it off the shelf, that would be unfair?

A. Okay. Yeah, that's fine.

Q. And would you agree that if you continue to sell the product and you didn't check it out, that could be deceptive, if there's other food items in there?

A. If we did that, yes. But we don't.

***

Q. You know that all of your customers expect your area to be clean and sanitary, even if they cannot see it; correct?

A. Yes.

Mr. Stebbins also cites his own testimony in support of his claim:

Q. You heard Mr. Funderburk testify yesterday about how they represent that they have the highest standards of cleanliness and food quality. Did you rely on—and that type of thing. Did you rely on those kind of representations when you made the decision to go back to McDonald's again and buy your biscuits and gravy.

A. I always assumed that McDonald's was of the highest quality. That's why I ate there so often.

-9-

The Tennessee Consumer Protection Act was enacted to provide statutory remedies beyond common-law fraud actions for consumers and legitimate business enterprises victimized by unfair or deceptive business acts or practices. *See* Tenn. Code Ann. § 47-18-102; *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). In order to recover under the Act, the plaintiff must prove: "(1) that the defendant engaged in an unfair and deceptive act or practice declared unlawful by the T.C.P.A. and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. . . .'" *Tucker*, 180 S.W.3d at 115 (citing Tenn. Code Ann. § 47-18-109(a)(1)). Our Supreme Court has stated that a "deceptive act or practice" is, in essence, a material representation, practice, or omission likely to mislead reasonable consumers to their detriment. *Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009); *accord Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 920 (E.D. Tenn. 2006) (likelihood of customer confusion is the essence of the test for a violation of the Tennessee Consumer Protection Act).[5]

Construed in the light most favorable to Mr. Stebbins,[6] the testimony shows that Funderburk represents its food to be of high quality, that it would not knowingly sell a product with a foreign object in it, and that when it learned that the tooth had been found in the gravy, took immediate steps to correct the situation, including sifting through the remaining gravy to make sure there was nothing else in it prior to disposing of it. The testimony does not show any "representation, practice or omission likely to mislead" Mr. Stebbins or any other consumer, as contemplated by the Act; the evidence supports only a finding of negligence in preparing and serving the food. There was no evidence to conclude that Funderburk violated the Act and a directed verdict on this claim was proper.

---

[5] The Consumer Protection Act does not define the terms "unfair" and "deceptive"; the Act does, however, set forth specific "unfair or deceptive acts or practices" that are declared unlawful and in violation of the Act. Tenn. Code Ann. § 47-18-104(b). The determination as to whether a particular act or practice is "unfair" or "deceptive" is a question of fact; whether the representation is "unfair" or "deceptive" under the Consumer Protection Act is a question of law. *See Tucker*, 180 S.W.3d at 116.

[6] When considering a directed verdict, a trial court must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. *Id.* Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn. 1982).

## III. Conclusion

For the foregoing reasons, the judgment of the Circuit Court for White County is affirmed.

_____

RICHARD H. DINKINS, JUDGE