# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 28, 2012 Session

## EDWARD G. ROCHELLE v.
## GRANGE MUTUAL CASUALTY COMPANY, ET AL.

### Direct Appeal from the Circuit Court for Humphreys County
### No. 10047     George C. Sexton,  Judge

---

### No. M2011-02697-COA-R3-CV - Filed July 31, 2012

---

This appeal results from the grant of summary judgment in favor of Appellee insurance company.  Appellee denied Appellant's claim for fire loss on the ground that Appellant made material misrepresentations in the application for insurance.  The trial court determined that Appellant took contradictory positions in his examination under oath and in his discovery deposition on the question of whether his application for insurance was completed when he signed it, or whether he signed it in blank before it was completed by the insurance agent. The trial court determined that Appellant's inconsistent statements were not effective to create a dispute of material fact for purposes of summary judgment. We conclude that the motion for summary judgment was improperly granted. Reversed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

John Lee Williams, Waverly, Tennessee, and Mark C. Odle, Dickson, Tennessee, for the appellant, Edward G. Rochelle.

Russell E. Reviere and Jonathan D. Stewart, Jackson, Tennessee, for the appellee, Grange Mutual Casualty Company.

Michael Parks Mills, Brentwood, Tennessee, for the appellees, Proctor Insurance Group and Charles Corey Burnette.

**OPINION**

In October 2008, Appellant Edward G. Rochelle contacted Proctor Insurance Group, L.L.C. ("Proctor Insurance") for the purpose of obtaining insurance coverage on a modular building, which Mr. Rochelle planned to use as a restaurant called Mustang Barbeque. At that time, Mr. Rochelle had done business with Proctor Insurance for approximately three years, with Proctor Insurance providing insurance coverage on Mr. Rochelle's other business, Rochelle Tires. The agent Mr. Rochelle used was Charles Corey Burnette.

Before procuring a policy for Mr. Rochelle's restaurant, on or about October 28, 2008, Mr. Burnette visited the property to perform a walk-through inspection of the building. After his inspection, Mr. Burnette met with Mr. Rochelle, and according to Mr. Rochelle's deposition testimony, Mr. Burnette presented him with a blank application for insurance. Mr. Rochelle states that he signed the form in blank and that Mr. Burnette later completed the form at his office. The complete application with Mr. Rochelle's signature reflects a date of October 29, 2008, one day following Mr. Rochelle and Mr. Burnette's meeting at the property. Based upon this application, Appellee Grange Mutual Casualty Company ("Grange") issued a commercial liability insurance policy, insuring Mustang Barbeque.

On November 29, 2008, a fire damaged Mustang Barbeque. According to the complaint, the fire began at the stove-grill-exhaust hood area of the restaurant; the deep fat fryer was not in use at the time and did not contribute to the fire. Thereafter, Mr. Rochelle made a claim under the insurance policy. Grange then began its investigation of the loss. The investigation included a request that Mr. Rochelle submit to an examination under oath ("EUO") as required under the policy. This EUO took place on March 11, 2009. During the EUO, Mr. Rochelle testified that he signed a completed insurance application that stated that no deep fat fryer was used on the premises and that he had no prior insurance losses. However, during the EUO, Mr. Rochelle admitted that Mustang Barbeque did use a deep fat fryer, and that he had previously claimed a fire loss on his personal residence. A transcript of the EUO was filed with the trial court on July 1, 2011.

By letter of May 15, 2009, Grange informed Mr. Rochelle that Grange was rescinding the insurance policy to the date of its inception so as to void the policy completely. Accordingly, Grange notified Mr. Rochelle that it would not pay his claim. As the ground for its denial of the claim, Grange relied upon the "concealment, misrepresentation or fraud" section of the insurance policy, which states that coverage is void if the insured "intentionally conceal[s] or misrepresent[s] a material fact . . . ." Relying on this provision, Grange claimed that Mr. Rochelle had made material misrepresentations in the application for insurance and in the post-loss investigation. Specifically, Grange alleged that Mr. Rochelle failed to disclose, on the application for insurance, that the restaurant used a deep fat fryer. Grange

also averred that Mr. Rochelle had failed to disclose his prior fire loss.

On July 20, 2009, Mr. Rochelle filed suit against Grange, Mr. Burnette, and Proctor Insurance based upon the denial of coverage following Mustang Barbeque's fire loss. The specific causes of action against Grange include breach of contract, bad faith failure to pay, and violation of the Tennessee Consumer Protection Act. The causes of action against Proctor Insurance and Mr. Burnette include breach of contract, misrepresentation and negligence, for which Grange is allegedly vicariously liable on the basis of Mr. Burnette and Proctor Insurance's agency relationship with Grange. As is relevant to the instant appeal, Mr. Rochelle avers that Mr. Burnette "filled out the appropriate documents including an insurance application," and that Mr. Burnette "check[ed] the answers to the various questions thereof, filling the blanks with the requested information," and "had [Mr. Rochelle] sign the form." Mr. Rochelle's complaint also states that, at the time of his visit to the premises, Mr. Burnette "was aware that a small non-commercial deepfat" was located in the restaurant, but that the agent did not inform Mr. Rochelle that this deep fat fryer could negate insurance coverage. The complaint further indicates that "Burnette performed the underwriting worksheets for Grange using Grange's computer software . . . ."

Proctor Insurance and Mr. Burnette answered the complaint on September 30, 2009, denying the material allegations contained therein. Grange filed its answer on October 8, 2009, alleging that its denial of the claim was based upon the alleged material misrepresentations made by Mr. Rochelle.

The parties proceeded with written discovery. In its responses to Mr. Rochelle's first set of interrogatories, Grange's Regional Sales Manager answered the question concerning the date on which the insurance policy was executed and signed as follows: "Mr. Rochelle signed the application on 10/29/08. The application was received by Grange on 10/30/08 and was submitted as a bound application with an effective date of 12:01 a.m. on 10/30/08. The policy was issued on 12/02/08." On August 30, 2010, Mr. Burnette gave a discovery deposition; Mr. Rochelle's discovery deposition was taken a year later on August 30, 2011. Both depositions were filed with the trial court on September 23, 2011.

Grange moved for summary judgment on July 1, 2011. In support of its motion, Grange filed a statement of undisputed material facts and a memorandum of law. The statement of undisputed material facts avers that Mr. Rochelle applied for insurance on October 29, 2008, by signing a "completed application for insurance. Grange averred that the insurance application contained material misrepresentations related to a previous fire loss and the presence of a deep fat fryer on the premises, which Grange asserted increased its risk of loss. Grange cited Mr. Rochelle's testimony, set out in the transcript of his EUO, that the application for insurance was completed when Mr. Rochelle signed it. Grange's statement

of undisputed material facts also states that Grange lacked knowledge "about both the presence of a deep fat fryer on the Property and [Mr. Rochelle's] previous fire loss. . . ." Grange also filed the affidavit of its Commercial Underwriter, Brad Foltz, who stated that Mr. Rochelle applied for insurance coverage on October 29, 2008, representing that the restaurant did not have a deep fat fryer and that he had not suffered any prior losses or claims.

Mr. Rochelle opposed the motion for summary judgment. In his response, Mr. Rochelle specifically disputed that the insurance coverage was applied for on October 29, 2008, and further denied that the insurance application was fully complete when he signed it. Mr. Rochelle's response also stated that "none of the handwritten contents on the application for insurance were written by Mr. Rochelle except for his signature." In support of these allegations, Mr. Rochelle relied upon the transcript of his deposition, which was taken on August 30, 2011, wherein he stated that the application had been presented to him in blank by Mr. Burnette, and that he had signed the blank form at Mr. Burnette's request on October 28, 2008. In addition to his deposition testimony, Mr. Rochelle also relied upon Mr. Burnette's deposition, which exhibited photographs taken by Mr. Burnette when he visited the restaurant, which was the same day that Mr. Burnette allegedly asked Mr. Rochelle to sign the blank application. These photos have a stamped date of October 28, 2008, which is the day before the completed application is dated. Accordingly, Mr. Rochelle argued that the fact that the application is dated October 29, when Mr. Burnette visited the site on October 28, indicates that Mr. Burnette actually filled out the application the day after it was presented to Mr. Rochelle to sign. Grange filed a response to Mr. Rochelle's opposition to the motion for summary judgment, wherein it reiterated the fact that Mr. Rochelle's EUO contradicted his deposition testimony on the question of whether the application was signed in completed form or in blank. Grange argued that the two inconsistent statements were of no probative value to establish a disputed issue of material fact.

A hearing on the motion for summary judgment was held on October 3, 2011. Mr. Rochelle did not dispute the fact that his EUO and deposition statements contain different versions of the events surrounding the application for insurance; however, he argues that the EUO was taken over two years before the deposition testimony, during which time discovery had been conducted. This discovery included Mr. Burnette's deposition, from which Mr. Rochelle allegedly realized that, in his EUO, he had mistakenly indicated that the application was completed when he signed it.

By Order of November 15, 2011, the trial court granted Grange's motion for summary judgment. The order incorporates, by reference, the trial court's statements made from the bench in support of its decision. Specifically, the motion was granted upon the trial court's finding that Mr. Rochelle had given conflicting testimony when he stated, in the EUO, that

-4-

the application was completed when he signed it, and thereafter testified, in his deposition, that he had signed the form in blank. Although Mr. Rochelle's claims against Proctor Insurance and Mr. Burnette are still pending in the trial court, the November 15, 2011 order was made final by inclusion of Tennessee Rule of Civil Procedure 54.02 language. Mr. Rochelle appeals. The sole issue for review is whether the trial court erred in granting summary judgment in favor of the Appellee insurance company.

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, L.L.C. v. Lemme*, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S .W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which

the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al.***, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in ***Evco Corp. v. Ross***, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

***Id***. at 24–25.

The fact that Mr. Rochelle made inconsistent statements under oath is undisputed. In his EUO, taken on March 11, 2009, Mr. Rochelle testified that he had signed a completed application:

> Q. And I have a copy of. . .the application of insurance that was completed at the time this policy was obtained. . . . [T]here is handwriting on this [application] where questions are asked or information is sought and it's filled out.
>     Do you know if that handwriting on the first page is yours other than the signature, or is that where Mr. Burnett[e] filled these things in?
>
> A. Well, that's Mr. Burnett[e]'s [handwriting]. You can tell where my name is spelled wrong up here [Mr. Rochelle goes by the first name "Eddie." On the application, it is spelled "Eddy"].
>
> *                         *                         *

Q. All right. And did you sign a completed application here? In other words, you signed—this was all filled in and you signed it, correct?

A. Yes, sir.

In his deposition testimony, taken on August 30, 2011, Mr. Rochelle states that he signed a blank form, which was later completed by Mr. Burnette:

Q. Mr. Rochelle, is that your signature on the first page of that document [i.e., the application for insurance] that's been marked as Exhibit 1. . . ."

A. Yes, sir.

Q. Was that document completed, filled out, when you signed it?

A. No, sir.

Q. Okay. Was any of it filled out?

A. No, sir.

Q. Okay. So you signed a completely blank document?

A. Yes, sir.

Q. All right. It's nine pages long, and, again, I would ask you to look at the ninth page, the last page.
     Is that your signature on the ninth page?

*                              *                              *

A. No, sir.

*                              *                              *

Q. Do you have any idea who signed Eddy Rochelle, 10/29/08, on the ninth page.

-7-

A. No, sir, I don't.

\*                                    \*                                    \*

Q. How did you come to sign a blank application?

A. Well, that was—my insurance agent came out on the 28th of October, took pictures. I signed this.

Q. You are indicating on the front page, the first page?

A. Yes, sir.

In his deposition, Mr. Rochelle further notes that the handwriting on the application, except for his signature on page one, is not his handwriting, and further noted that his name was incorrectly spelled E-D-D-Y on the application—a mistake that Mr. Rochelle alleged he would not have made.

In his deposition, taken on August 30, 2010, Mr. Burnette testified, in relevant part, as follows:

Q. When did Mr. Rochelle first contact you about obtaining insurance?

A. Date?

Q. Yes.

A. I couldn't tell you the exact date. I mean, we had his insurance on something else before that, on his tire shop. So I couldn't tell you an exact date.

\*                                    \*                                    \*

Q. Did you do a walk-through [of the restaurant] then?

A. Yes.

Q. Do you know what date?

-8-

A. I don't.

Q. You took photos?

A. Yes.

Q. Do you know how many?

A. Four.

The four photos that Mr. Rochelle testified he took on the day that he did the walk-through of Mustang Barbeque were admitted as collective exhibit 1 to his deposition. Although these photos are presented in black-and-white, at least one of them shows a date stamp of October 28, 2008.

Mr. Burnette was further questioned concerning whether he saw the deep fat fryer when he made his inspection:

A. So I went out there to get a picture of the stove and the smoker.

\*                                    \*                                    \*

Q. Did you notice a deep fat fryer when you were there?

A. No.

Q. So did you ever ask Mr. Rochelle if they cooked with a deep fat fryer?

A. I don't know if I asked him that particular question.

Also relevant to the instant appeal is Mr. Burnette's testimony that he filled out the insurance application:

Q. Who filled the application out?

A. I filled the application out.

Q. Where were you at when you filled it out?

-9-

A.  Probably at my office on the computer.

Q.  Okay.  But you're not sure?

A.  Well, that's where it would have been filled out.

"Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out." *Church v. Perales*, 39 S.W.3d 149, 169–70 (Tenn. Ct. App. 2000) (citing *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993)); *see also **Helderman v. Smolin***, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005).  "If determined by the trial court to be contradictory, the statements by the witness are considered to be 'no evidence' of the fact sought to be proved." *Helderman*, 179 S.W.3d at 501 (quoting *Wilson v. Patterson*, 73 S.W.3d 95, 103–04 (Tenn. Ct. App. 2001)). This Court recently explained the long-standing policy behind the cancellation rule, stating:

> If parties in court were permitted to assume inconsistent positions in the trial of their cause, the usefulness of courts of justice would in most cases be paralyzed. The coercive powers of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all men are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come in or are brought before them. It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately, in the course of litigation, must act consistently with it. One cannot play fast and loose.

*Helderman*, 179 S.W.3d at 501–02 (quoting *Stamper v. Venable*, 117 Tenn. 557, 97 S.W. 812, 813 (Tenn. 1906)).

*Tennessee Law of Evidence* further explains the cancellation rule, stating:

> A number of Tennessee decisions adopt a rule that contradictory statements by a witness on the same fact cancel each other and therefore amount to no evidence of that fact. Although not technically a rule of evidence, this rule can have a significant impact on a case and merits attentions.

The rule is explained as follows:

> The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide either way.

> [*Johnston v. Cincinnati N.O. & T.P. Ry. Co.*, 146 Tenn. 135, 240 S.W. 429, 436 (Tenn. 1922)].

> It should be noted that this rule is actually more narrow than it would appear to be. No sensible decision holds that a witness's testimony on a fact is automatically discounted simply because the witness contradicted himself or herself on that fact. Rather, the court assesses whether there is an explanation for the inconsistency and whether either version is corroborated by other evidence. The courts recognize that testimony may have value even though it has been both affirmed and denied if the contradiction is explained and shown to be the product of misunderstanding or inadvertence.

The explanation can take many forms. For example, one deponent in one deposition denied repeating a rumor, then admitted the repetition in a second deposition a year later. The court held the cancellation rule did not apply because the deponent had refreshed his recollection in the interim between the two depositions. In another case, a witness who had given contradictory statements prior to trial explained in his testimony that he had been threatened and therefore felt he had to exonerate the defendants when making his earlier statements, which were untrue.

Corroboration of one version is also frequently found, thereby blocking the cancellation rule. Often it consists of the testimony of another witness.

Cohen, *et al.*, *Tennessee Law of Evidence* § 6.07[5] (footnotes omitted). "When the

cancellation rule is invoked at the summary judgment stage to challenge evidence opposing the motion, the courts must view the challenged evidence in the light most favorable to the opponent of the motion." *Helderman*, 179 S.W.3d at 502 (quoting *Perales*, 39 S .W.3d at 170).

Applying the foregoing principles to this case, and reviewing all of the evidence and inferences in the light most favorable to Mr. Rochelle as the non-moving party, we conclude that a close reading of Mr. Rochelle's two sworn statements indicates that, in both sworn statements, Mr. Rochelle conceded that he signed the first page of the application and that Mr. Burnette had been the one to fill in the questions; it is only the timing of Mr. Burnette's filling in the blanks that was contradictory. In the EUO, Mr. Rochelle states that the form was filled in when he signed it. In his deposition testimony, however, Mr. Rochelle varies his account, stating that he signed the form in blank, and that Mr. Burnette then took the blank, signed application to his office where Mr. Burnette filled it out. Thus, the two sworn statements contradict each other only insofar as to when Mr. Burnette filled out the application. However, in both of his sworn statements, Mr. Rochelle consistently testifies that it was Mr. Burnette who actually filled in the application. His position is supported by the additional fact that Mr. Rochelle's name was spelled incorrectly on the application, and the fact that the handwriting on the form was not Mr. Rochelle's. It is only on the question of whether he signed a form that had previously been completed by Mr. Burnette, or whether he signed an application that was later filled in by Mr. Burnette that Mr. Rochelle's testimonies conflict.

Concerning whether the form was filled out before he signed it (as stated in his EUO) or after he signed it (as stated in his deposition), Mr. Rochelle explains the inconsistency between his two sworn testimonies by pointing out that over two years passed between the time he gave the EUO and the time he was deposed. In addition, Mr. Rochelle states that during this time, discovery was conducted, and based upon Mr. Burnette's discovery deposition testimony, Mr. Rochelle realized that he had made a mistake in his EUO by testifying that the form was filled in by Mr. Burnette **before** Mr. Rochelle signed it. He, therefore, argued that his deposition testimony, i.e., that he signed the application in blank before it was later filled in by Mr. Burnette, was the correct version of the facts. Mr. Burnette's testimony seems to corroborate this version. Mr. Burnette clearly states in his deposition that he was the one who filled in the application, and he further states that the application would have been filled out at his office. Moreover, Mr. Burnette admits that he took photographs when he made his on-sight inspection of the restaurant, and that this was also the same day that Mr. Rochelle signed the application. Based upon the date of October 28 on the photo, and the fact that the application is dated October 29, there is a reasonable inference to be drawn that Mr. Rochelle signed a blank application, which Mr. Burnette filled out at his office the next day before forwarding it to Grange. Consequently, there is

sufficient evidence in the form of Mr. Burnette's testimony to corroborate Mr. Rochelle's deposition version of events–i.e., that the form was signed in blank, and was later filled out by Mr. Burnette at his office. As previously discussed, "in order to be disregarded under the so-called cancellation rule, the allegedly contradictory statements must be unexplained and neither statement can be corroborated by other competent evidence." *Perales*, 39 S .W.3d at 170 (citing *Matthews*, 888 S.W.2d at 450). Additionally, "there should not be a dismissal for inconsistency in testimony of a witness unless it represents an unequivocal and irreconcilable conflict." *Helderman*, 179 S.W.3d at 507 (quoting *Gambill v. Middle Tenn. Med. Ctr., Inc.*, 751 S.W.2d 145, 151–52 (Tenn. Ct. App. 1988). Accordingly, and based on the corroboration by other testimony and evidence in the record, we conclude that the cancellation rule does not apply to negate Mr. Rochelle's testimony. The next question, then, is whether there is a dispute of material fact in this case so as to preclude the grant of summary judgment.

The grant of summary judgment was based upon the trial court's determination that Mr. Rochelle had made material misrepresentations in his application for insurance. According to the provision of the insurance policy, which Grange relied upon to deny Mr. Rochelle's claim, any misrepresentation sufficient to void the policy would have to be made "intentionally" by Mr. Rochelle. Tennessee Code Annotated Section 56-7-103 provides that:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Based upon this statutory provision, 8 Tenn. Practice: Tenn. Pattern Jury Instructions-Civil § 13.25 (2011) provides:

> To establish a defense of misrepresentation on an application for insurance, the insurance company must prove by a preponderance of the evidence that the policyholder's representations were:
>
> 1. False; and
> 2. Made with the intent to deceive.
>
> In order to establish an intent to deceive it must be proved that

the policyholder sought to influence the judgment of the insurance company in issuing the policy. An intent to deceive may be inferred from a knowing and willful misrepresentation.

A person acts "knowingly" if that person desires to act in a particular manner and is aware of the probable consequences of those actions. A person acts "willfully" if that person desires to act in a particular manner and to cause the result that actually occurs.

*Id*. (internal brackets omitted). In order to avoid coverage, Grange must first prove that the answers in the application were false; then it must prove either that the false answers were given with intent to deceive the insuror or that the false answers increased the risk of loss. *See **Spellmeyer v. Tennessee Farmers Mut. Ins. Co.***, 879 S.W.2d 843, 846 (Tenn. Ct. App. 1993). The questions of whether the answers were false and, if so, whether there was intent to deceive are questions of fact. *Id.* at 846. Thus, the salient question presented is whether Mr. Rochelle intentionally misrepresented anything in his application for insurance so as to allow Grange, under the foregoing law, to void the policy. This inquiry goes to Mr. Rochelle's intent—i.e., in order to void the policy, Mr. Rochelle must have intended to deceive Grange with his application, or there must be some basis in the record on which to infer that Mr. Rochelle knew he was being deceptive in his application.

At no point in either his EUO or deposition testimony does Mr. Rochelle testify that he was the one that answered the application questions. It was Mr. Rochelle's position throughout that he either signed a blank application, which was later filled in by Mr. Burnette, or that he signed an application that Mr. Burnette had previously filled out before presenting it to Mr. Rochelle for his signature. If Mr. Rochelle signed a blank form, which Mr. Burnette later filled in at his office, then there is a factual dispute as to whether Mr. Burnette could intentionally misrepresent anything if he did not answer the application questions himself. On the other hand, Tennessee courts have held that one is under a duty to learn the contents of a written contract before signing it and if, without being the victim of fraud, the party fails to read the contract or otherwise fails to learn its contents, then the party signs the contract at his or her peril and is estopped to deny his obligation. *See **Beasley v. Metropolitan Life Ins. Co.***, 229 S.W.2d 146 (Tenn. 1950); ***Giles v. Allstate Ins. Co.***, 871 S.W.2d 154 (Tenn. Ct. App. 1993). Accordingly, if a fact finder concludes that Mr. Rochelle signed a form that had been filled in by Mr. Burnette prior to Mr. Rochelle signing it, then, under Tennessee law, Mr. Rochelle could be bound by the contents of the application, although he did not answer the questions himself. Under either factual scenario, a question of fact exists as to whether Mr. Rochelle made intentional misrepresentations in his application or whether he may be charged with intent for signing a form that Mr. Burnette

-14-

completed. Based upon our conclusion that a dispute of material fact exists in this case, the grant of summary judgment was not appropriate.

For the foregoing reasons, we reverse the grant of summary judgment and remand for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed against the Appellee, Grange Mutual Casualty Company, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE